*320 PER CURIAM.
bin this case, we are called upon to decide whether a jury’s factual finding that a physician did not breach the appropriate standard of care is manifestly erroneous. For the reasons that follow, we find the jury’s verdict is supported by the evidence and is not clearly wrong.
FACTS AND PROCEDURAL HISTORY
This case was previously before the court in Snider v. Louisiana Medical Mut. Ins. Co., 13-0579 (La.12/10/13), 130 So.3d 922. The underlying facts were set forth in our opinion as follows:
On May 13, 2007, within days of his twenty-seventh birthday, Clyde Snider, Jr., was hospitalized at CHRISTUS St. *321 Patrick Hospital (“St.Patrick”), in Lake Charles, Louisiana, for a suspected myocardial infarction. Mr. Snider was treated by cardiologist Dr. Jean King White, who diagnosed him with coronary artery disease and acute coronary syndrome, which was treated with angioplasty and the implantation of a heart stent in Mr. Snider’s circumflex artery. He was also placed on medications, including a cholesterol-lowering medication, a beta-blocker, and a blood thinner.
On August 28, 2007 Mr. Snider sought treatment at the Beauregard Memorial Hospital (“Beauregard”) emergency room in DeRidder, Louisiana for shortness of breath, chest pains, dizziness, lightheadedness, and faintness. Mr. Snider disclosed his past medical history, which included the May 2007 heart attack and coronary artery disease treatment, as [¡.well as diabetes, hypertension, hyperlipidemia, and a strong family history of premature coronary artery disease. Beauregard cardiologist Dr. Robin Yue diagnosed Mr. Snider with symptomatic bradycardia, as his heart rate fell as low as thirty-five beats per minute (a normal heart rate is considered to be at least sixty beats per minute). Dr. Yue recommended heart catheterization and implantation of a pacemaker; Mr. Snider consented. The procedures were performed later that day, and Mr. Snider was discharged from the hospital the following day.
On the day of his discharge from Beauregard, Mr. Snider sustained an unrelated injury to the area of his pacemaker, when, on his return home, his two-year-old daughter ran to greet him and jumped into his arms, striking his chest and causing injury to the surgical site. Mr. Snider returned to the Beauregard emergency room that evening, complaining of numbness in his left arm and pain in his shoulder. Mr. Snider was examined by Dr. Yue, who noted redness, swelling, severe tenderness at the pacemaker surgical site, left shoulder pain, and left arm weakness. Because Dr. Yue was leaving town on a previously-scheduled business trip, Mr. Snider was left in the care of Dr. Flynn A. Taylor, who ordered that Mr. Snider be monitored for signs of infection and hemato-ma at the pacemaker implant site. Deeming outpatient antibiotic treatment appropriate, Dr. Taylor discharged Mr. Snider from Beauregard on September 3, 2007.
On September 4, 2007 Mr. Snider returned to St. Patrick, where he was previously treated for his May 2007 cardiac problems, and was admitted to the hospital. He was examined by his treating cardiologist there, Dr. White, who found symptoms of infection at the pacemaker surgical site. Dr. White recommended removal of the pacemaker. The next day, Dr. Michael C. Turner, a cardiovascular surgeon, removed the pacemaker.
Subsequently, Mr. Snider filed a medical malpractice complaint against Dr. Yue, which was presented to a medical review panel. The medical review panel concluded that Dr. Yue had failed to comply with the appropriate standard of care and that his conduct was a factor in the “minor resultant damage.” The medical review panel issued the following reasons for their decision:
Dr. Yue rushed the decision for implantation of a permanent pacemaker in this patient. He should have stopped the beta-blocker and the riva-roxaban for 24-48 hours, and monitored |athe patient for possible improvement or deterioration in heart rate, before making the decision about a permanent pacemaker. Except for *322 the relatively minor complication of a hematoma, and the surgical scar after pacemaker extraction, we found no evidence of any long-term, major injury to this patient.
On December 16, 2010 Mr. Snider and his then-wife, Lisa Snider, individually and on behalf of their minor child, filed suit against Dr. Yue and his liability insurer, Louisiana Medical Mutual Insurance Company, seeking recovery for damages arising out of Dr. Yue’s alleged negligence in the treatment of Mr. Snider on August 28, 2007. The Sniders alleged that Dr. Yue was at fault for: (1) failing to exercise a reasonable degree of skill and competence possessed and ordinarily exercised by members of his profession; (2) failing to provide Mr. Snider with diligent and skillful care; (3) failing to undertake conservative treatment to resolve Mr. Snider’s medical condition and failing to stop his blood thinner medication prior to performing surgery; (4) proceeding to surgery for implantation of a pacemaker when Mr. Snider’s condition and medications made said treatment contraindicated; (5) failing to consult with Mr. Snider’s treating physician when Mr. Snider specifically asked that he be consulted; (6) failing to educate Mr. Snider on his true condition and the exact treatment being recommended and implemented; and (7) performing unnecessary surgery on Mr. Snider, resulting in complications requiring further treatment and surgery. In March of 2012 this case was tried before a jury, which ruled in favor of Dr. Yue, finding that Mr. Snider had not proved by a preponderance of the evidence that Dr. Yue breached the applicable standard of care owed.to Mr. Snider. The plaintiffs’ subsequent motion for judgment notwithstanding the verdict and, alternatively, for new trial was denied by the district court judge, who stated that the jury verdict was not clearly contrary to the law and evidence. Snider, 13-0579 at pp. 1-5, 130 So.3d at 926-27.
Plaintiffs appealed, assigning multiple errors. On appeal, the court of appeal found merit to plaintiffs’ assignment of error asserting Dr. Yue failed to properly obtain Mr. Snider’s informed consent to the pacemaker implantation surgery, because he failed to provide all of the information required by La. R.S. 40:1299.40(E). Snider v. Louisiana Medical Mut. Ins. Co., 12-1068 (La.App. 3 Cir. 2/27/13), 129 So.3d 61. Accordingly, the court of appeal rendered judgment in favor of the plaintiffs and, against defendants on the issue of liability and remanded the'matter to the district court to allow the parties an opportunity to complete the record as to damages.[1]
Defendants sought review in this court. We granted writs and reversed the judgment of the court of appeal. Snider v. Louisiana Medical Mut. Ins. Co., 13-0579 (La.12/10/13), 130 So.3d 922. In our opinion, we explained the court of appeal erred in failing to apply a manifest error standard of review to the jury’s factual finding that informed consent was given in this case. Accordingly, we reversed the court of appeal’s judgment and remanded the case to the court of appeal “to consider and rule upon plaintiffs’ assignments of error, including those assignments of error pretermitted by the appellate court, in accordance with the views expressed herein.” Id. at p. 22, 130 So.3d at 939.
On remand, the court of appeal again reversed the trial court, rendered judg *323 ment as to liability, and remanded for determination of damages. Snider v. Louisiana Medical Mut. Ins. Co., 12-1068 (La.App. 3 Cir. 8/27/14), 146 So.3d 965. In its opinion, the court of appeal reasoned the jury was manifestly erroneous in failing to find Dr. Yue’s actions fell below the acceptable standard of care.[2]
Upon defendants’ application, we granted certiorari to review the correctness of this determination. Snider v. Louisiana Medical Mutual Insurance Company, 14-1964 (La.12/8/14), 153 So.3d 431.
DISCUSSION
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or.unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). This test dictates that a reviewing court must do more than simply review the record for some evidence that may controvert the trial court ruling. Rather, it requires a review of the entire record to determine whether manifest error has occurred. Thus, the issue before the court of appeal is not whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was a reasonable one. Clay v. Our Lady of Lourdes Regional Medical Center, 11-1797 (La.5/8/12), 93 So.3d 536, 543. The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270, 278-79. Where the factfinder’s determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. Bellard v. American Central Ins. Co., 07-1335 (La.4/18/08), 980 So.2d 654, 672.
 Considering these principles, we now turn to a review of the record. Specifically, we will look at the expert medical testimony to determine whether Dr. Yue’s decision to implant the pacemaker was within the appropriate standard of care.
Dr. Michael Turner, tendered as an expert in cardiac pacing, cardiovascular disease and internal medicine, testified on behalf of plaintiffs. Dr. Turner testified in his opinion, the appropriate standard of care would have been to follow a conservative treatment rather than implanting the pacemaker. He testified he would have observed the patient for one day or several days and try drug therapy to alleviate the slow heartbeat. However, on cross-examination, Dr. Turner admitted the guidelines for pacemaker implantation were met in this case. He further acknowledged that it was fair to say some cardiologists would have made the choice to implant the pace *324 maker, even though he would not have done it.
Dr. Jean King White, Mr. Snider’s treating cardiologist, testified on plaintiffs’ behalf. Dr. White testified he did not have an opinion as to whether it was necessary for Dr. Yue to implant the pacemaker. He stated he never recommended Mr. Snider have a pacemaker because he had “never seen him with a slow heart rate except when he was on a beta blocker.”
Defendants called Dr. Yue. Dr. Yue testified he relied on four considerations in recommending implantation of the pacemaker: (1) Mr. Snider had a very slow heart rate, below 40; (2) Mr. Snider was symptomatic, with symptoms of shortness of breath and chest pain; (3) Mr. Snider’s heart rate became very fast when he was not on medication, and he needed to continue the medication to protect his heart; and (4) Mr. Snider’s heart was weak, as shown by an echocardiogram. Dr. Yue testified he did not see much benefit to waiting, pointing out that patients with low heart rates can become unstable.
|7Pr. Freddy Michel Abi-Samra testified for defendants as an expert in cardiology, internal medicine and electrophysiology. Dr. Abi-Samra discussed the categories set forth in the “Indications for Permanent Cardiac Pacing,” and explained Mr. Snider’s case presented a “clear type two indication for implantation.” He further opined Dr. Yue was within the appropriate standard of care in performing the pacemaker implantation.
A review of the record in its entirety demonstrates the jury’s conclusion that Dr. Yue did not breach the appropriate standard of care was reasonable. The defense expert, Dr. Abi-Samra, testified that Mr. Snider’s condition clearly fell within Class II category in the “Indications for Permanent Cardiac Pacing,” which permits implantation of a permanent pacemaker. While plaintiffs’ expert, Dr. Turner, testified that he would not have implanted a pacemaker under the facts, he admitted the guidelines for pacemaker implantation were met in this case, and acknowledged some cardiologists would have made the choice to implant the pacemaker, even though he would not have done it. Faced with these different opinions, the jury obviously chose to accept the testimony of the defense expert. This conclusion is not manifestly erroneous.
Accordingly, we reverse the judgment of the court of appeal holding the jury was manifestly erroneous in failing to find Dr. Yue’s actions fell below the acceptable standard of care. Consistent with our prior judgment in Snider v. Louisiana Medical Mut. Ins. Co., 13-0579 (La.12/10/13), 130 So.3d 922, the case is remanded to the court of appeal to consider the remaining assignments of error in the appeal.
IsDECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The case is remanded to the court of appeal for further proceedings consistent with this opinion.

. The issue of damages had been severed from the issue of liability and no quantum evidence was presented at trial after the jury verdict absolved the defendants of liability.

. Although our order of remand directed the court of appeal to review the jury's informed consent finding under a manifest error standard, the court of appeal pretermitted this issue, stating, “it is not necessary for us on remand to visit the question of informed consent again because even if Snider gave informed consent under Sections A or B of the statute, which the supreme court finds applicable, such consent has no bearing on the question of whether Dr. Yue's actions fell below the standard of care when he rushed to implant a permanent pacemaker in the body of Snider.” Snider, 12-1068 at p. 5, 146 So.3d at 967-68.