STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-809


THE KNOLL LAW FIRM, LLC

VERSUS

VINCENT J. DESALVO


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2014-1282-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and John E. Conery, Judges.


AFFIRMED.

**Jerold Edward Knoll**
**Jerold Edward Knoll, Jr.**
**Edmond H. Knoll**
**Laura Bishop Knoll**
**The Knoll Law Firm, LLC**
**Post Office Box 426**
**Marksville, Louisiana 71351**
**(318) 253-6200**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **The Knoll Law Firm, LLC**

**Vincent J. DeSalvo**
**7918 Wrenwood Boulevard, Suite A**
**Baton Rouge, Louisiana 70809**
**(225) 927-7035**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Vincent J. DeSalvo**

**CONERY, Judge.**

This case involves a dispute between The Knoll Firm and attorney Vincent J. DeSalvo. The Knoll Firm was counsel for Erick McGill in a personal injury action, and was replaced as counsel for Mr. McGill by Mr. DeSalvo, who dispersed the client's funds received pursuant to a judgment in favor of Mr. McGill without paying pharmacy charges guaranteed by The Knoll Firm. The trial court found in favor of The Knoll Firm and awarded judgment against Mr. DeSalvo for the pharmacy bill in the amount of $1,519.19, which had been voluntarily paid by The Knoll Firm pursuant to its guarantee on behalf of its then client, Mr. McGill. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mr. McGill retained the services of The Knoll Firm on July 15, 2011. The Knoll Firm filed a personal injury lawsuit on Mr. McGill's behalf against the City of Marksville and Trent Young in the Twelfth Judicial District Court, Parish of Avoyelles, for an accident which occurred on July 4, 2011. During its representation of Mr. McGill, The Knoll Firm guaranteed payment of certain medical expenses for accident-related treatment, including a bill incurred for prescribed medication at Don's Pharmasave in the amount of $1,159.19.[1]

On August 6, 2012, Mr. McGill notified The Knoll Firm in writing that he had obtained new representation, and that Mr. DeSalvo, his new counsel, would shortly be in contact. On August 22, 2012, Mr. DeSalvo faxed correspondence to Mr. Edmond Knoll of The Knoll Firm advising of his representation of Mr. McGill.

---

[1] Exhibits 1-11, referenced by The Knoll Firm, were admitted into evidence at trial in globo without objection and contain copies of the bills in question.

In his correspondence, Mr. DeSalvo stated, "Of course, I will protect any expenses you have in this matter and will be more than happy to discuss an amicable resolution of the fee with you[.]" Mr. DeSalvo further requested that The Knoll Firm, "forward the file materials to me and I would appreciate receiving a list of your expenses so that I can advise the client and send you a protection letter."

On August 22, 2012, The Knoll Firm filed a lien in the Mortgage Records of Avoyelles Parish against Mr. McGill, attaching The Knoll Firm's "CONTRACT TO HIRE ATTORNEY." Additionally, on August 22, 2012, The Knoll Firm, via Facsimile and the U.S. Mail, sent in addition to other file materials, "Mr. McGill's Medical Packet showing medical expenses incurred and/or outstanding[.]" The Medical Packet contained a detailed listing of Mr. McGill's accident related medical expenses, including, an outstanding bill from Don's Pharmasave, inclusive of the dates 07/15/11-07/10/12, in the amount of $1,159.59. The documentation supporting the amount owed to Don's Pharmasave reflected medications prescribed and filled for Mr. McGill while he was a client of The Knoll Firm.

The August 22, 2012 correspondence from The Knoll Firm to Mr. DeSalvo also included the following, "I respectfully request that prior to Mr. McGill receiving any settlement funds that I be contacted to discuss the amount owed to my firm. . . . Upon settlement, please contact my office to obtain a final list of all expenses incurred by my office for Eric McGill."

On June 24, 2014, The Knoll Firm sent another written response to Mr. DeSalvo's request for "a list of expenses incurred in regards to Eric McGill," as a result of the ongoing litigation. Once again, the list from The Knoll Firm included an outstanding bill from Don's Pharmasave, inclusive of the dates 07/15/11-07/10/12, in the amount of $1,159.59. The medical portion of The Knoll Firm

expenses also included amounts owed to "LSU Huey P. Long Hospital" for "$193.00" and to "Dr. Darron McCann" for "$2,941.90," all guaranteed by The Knoll Firm.

Mr. McGill was awarded $35,582.92 in damages after a trial on the merits. Prior to the final disbursement of funds to Mr. McGill, all counsel agreed a $3,000.00 attorney fee was owed to The Knoll Firm. However, there was no specific discussion of the expenses owed between The Knoll Firm and Mr. DeSalvo. The Knoll Firm was not provided a copy of Mr. McGill's final "SETTLEMEMENT DISBURSEMENT SHEET," outlining the expenses associated with the litigation and the disbursement of his final payment of $4,810.77 until after the disbursement had been made. The final settlement disbursement sheet signed by Mr. McGill only listed $149.50 as the amount owed to "Don's Pharmacy (Per Charlotte 6/19/14)" on behalf of Mr. McGill, this despite documentation and two separate notices to Mr. DeSalvo that the amount owed to Don's Pharmasave was $1,159.59 for medication charged by Mr. McGill and guaranteed by The Knoll Firm while acting as his counsel.

On or about December 15, 2014, The Knoll Firm was notified by the pharmacist at Don's Pharmasave that the outstanding pharmacy bill for Mr. McGill guaranteed by The Knoll Firm had not been paid. That same day, The Knoll Firm paid the outstanding balance of $1,159.59 with firm check number 16182. The final invoice from Don's Pharmasave reflected charges for Mr. McGill through July 23, 2012. The notation at the top of the invoice shows "ERICK MCGILL, ATY EDDIE KNOLL."

On December 15, 2014, counsel with The Knoll Firm also sent correspondence by both Facsimile and the U.S. Mail to Mr. DeSalvo demanding

3

that he reimburse The Knoll Firm for the pharmaceutical expenses paid on behalf of Mr. McGill. The Knoll Firm's demand for reimbursement was based on the outstanding balance of $1,159.59 submitted to Mr. DeSalvo prior to trial in its June 24, 2014 correspondence, as well as in the Medical Packet sent on August 22, 2012.

Mr. DeSalvo replied in correspondence dated December 18, 2014, via Facsimile, that he was enclosing the bill from Don's Pharmasave which was presented at trial, and which only showed an outstanding balance of $149.50 for the period from 9/14/12 to 10/23/12 and through January 31, 2013. The notation at the top of the invoice shows, "MCGILL, ERICK VINCENT DESALVO ATY." Mr. DeSalvo refused to accept responsibility for the repayment of The Knoll Firm's guarantee of the Don's Pharmasave invoice for Mr. McGill, and he indicated that "he was not aware" of any additional outstanding bills from Don's Pharmasave, having only received bills from the pharmacy indicating that Mr. McGill's balance was only $149.50.[2] Mr. DeSalvo concluded by saying, "This matter is between you and Don's Pharmacy."

The Knoll Firm responded to Mr. DeSalvo on December 18, 2014, by Facsimile and the U.S. Mail, once again reiterating that the outstanding balance owed to Don's Pharmasave by The Knoll Firm was included in the June 24, 2014 list of expenses sent to Mr. DeSalvo as per his request, as well as in the original August 22, 2012 Medical Packet. The letter reiterated the obligation Mr. DeSalvo had undertaken when he assumed the representation of Mr. McGill to make "sure any outstanding balances incurred by my representation of Mr. McGill were to be

---

[2] Mr. DeSalvo's invoices from Don's Pharmasave were introduced into evidence at trial as Defendant's Exhibit 1 in globo. Defendant's Exhibit 2, also admitted into evidence at trial, was the summary of medical expenses agreed to and admitted into evidence at Mr. McGill's trial. The summary shows an amount of $156.96 owed to "Don's Pharmacy."

paid at the time of disbursement out of any funds received in his case." Further, The Knoll Firm claimed that Mr. DeSalvo was personally responsible for the amount owed due to his failure to confirm with The Knoll Firm any outstanding expenses for Mr. McGill prior to the distribution of his settlement funds, which would have allowed The Knoll Firm to once again confirm the outstanding amount of $1,159.59.

Mr. DeSalvo responded by filing an ethical complaint with the Office of Disciplinary Counsel on December 18, 2014, wherein he attached a copy of the correspondence received from The Knoll Firm. Mr. DeSalvo stated as his basis for the complaint:

> Today, I received a letter from Mr. Knoll (a copy of which is enclosed), threatening to file a complaint with the Disciplinary Board if I do not reimburse him for the $1,159.59 which he paid to Don's Pharmacy on December 15, 2014. This is his second threat to me. I believe it is a violation of ethical rules to threaten legal action or ethical complaints in an obvious attempt to collect money.

The Knoll Firm filed suit against Mr. DeSalvo on December 30, 2014, seeking payment of the $1,159.59 paid to Don's Pharmasave on behalf of Mr. McGill. A bench trial was held on May 1, 2015. At the close of trial, the matter was submitted on the record by both counsel and taken under advisement by the trial court. On May 29, 2015, the trial court issued written reasons for ruling, finding in favor of The Knoll Firm and ordering Mr. DeSalvo to pay $1,159.59 with interest from the date of judicial demand and assessing all costs against Mr. DeSalvo. The judgment was signed on June 16, 2015, from which a timely appeal was filed by Mr. DeSalvo.

5

## ASSIGNMENT OF ERROR

Mr. DeSalvo asserts the following error on appeal, "The Trial Court erred in holding that Vincent J. DeSalvo was obligated to pay Don's Pharmasave statement to The Knoll Firm, for alleged medical expenses incurred by a former client of The Knoll Firm, Erick McGill."

## LAW AND DISCUSSION

### *Standard of Review*

The Louisiana Supreme Court in the recent case of *Snider v. Louisiana Medical Mutual Insurance Co.*, 14-1964, p. 5 (La. 5/5/15), 169 So.3d 319, 323 reiterated the applicable standard of review and stated:

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989). This test dictates that a reviewing court must do more than simply review the record for some evidence that may controvert the trial court ruling. Rather, it requires a review of the entire record to determine whether manifest error has occurred. Thus, the issue before the court of appeal is not whether the trier of fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one. *Clay v. Our Lady of Lourdes Regional Medical Center,* 11-1797 (La.5/8/12), 93 So.3d 536, 543. The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. *Pinsonneault v. Merchants & Farmers Bank & Trust Co.,* 01-2217 (La.4/3/02), 816 So.2d 270, 278-79. Where the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. *Bellard v. American Central Ins. Co.,* 07-1335 (La.4/18/08), 980 So.2d 654,672.

6

*Mr. DeSalvo's Assignment of Error*

Mr. DeSalvo argues that the trial court erred in finding that he owed the $1,159.59 paid by The Knoll Firm to Don's Pharmasave for the pharmaceutical bills of their former client, Mr. McGill. Mr. DeSalvo contends that The Knoll Firm was not required to pay Don's Pharmasave because Don's failed to perfect the privilege allowed to providers of medical services to an injured person as set forth in La.R.S. 9:4752[3] by not sending the necessary written notice as required by La.R.S. 9:4753 [4] to Mr. DeSalvo.

The trial court set forth its findings and conclusions in written reasons, which we quote with approval, in pertinent part:

---

[3] Louisiana Revised Statutes 9:4752 provides:

A health care provider, hospital, or ambulance service that furnishes services or supplies to any injured person shall have a privilege for the reasonable charges or fees of such health care provider, hospital, or ambulance service on the net amount payable to the injured person, his heirs, or legal representatives, out of the total amount of any recovery or sum had, collected, or to be collected, whether by judgment or by settlement or compromise, from another person on account of such injuries, and on the net amount payable by any insurance company under any contract providing for indemnity or compensation to the injured person. The privilege of an attorney shall have precedence over the privilege created under this Section.

[4] Louisiana Revised Statutes 9:4753 provides in pertinent part:

A. The privilege created by R.S. 9:4752 shall become effective if, prior to the payment of insurance proceeds, or to the payment of any judgment, settlement, or compromise on account of injuries, a written notice containing the name and address of the injured person and the name and location of the interested health care provider, hospital, or ambulance service is delivered by certified mail, return receipt requested, or by facsimile transmission with proof of receipt of transmission by the interested health care provider, hospital, or ambulance services, or the attorney or agent for the interested health care provider, hospital, or ambulance service, to the injured person, to his attorney, to the person alleged to be liable to the injured person on account of the injuries sustained, to any insurance carrier which has insured such person against liability, and to any insurance company obligated by contract to pay indemnity or compensation to the injured person. This privilege shall be effective against all persons given notice according to the provisions of this Section and shall not be defeated nor rendered ineffective as against any person that has been given the required notice because of failure to give the notice to all those persons named in this Subsection.

7

Additionally, this Court performed research on Louisiana State Bar Association Rules of Professional Conduct and several cases on the issues of negligent misrepresentation and/or misinformation. Although DeSalvo indicates that the Knoll Law Firm committed some kind of ethical violation, after extensive research, this Court does not find any authority to substantiate this allegation. The Knoll Law Firm had a duty to protect the interest of Don's Pharmasave and did not have to wait for Don's to perfect a lien in order to pay what they guaranteed. Settlement funds had already been disbursed when the Knoll Law Firm had already paid the balance due to Don's Pharmasave.

In the contract to hire attorney executed by McGill on July 15, 2011[,] with the Knoll Law Firm, this contract provides that the client authorizes the attorney to deduct and pay medical expenses of this claim from their recovery directly to the person, firms or entity to whom the expenses are due. Due to the fact that the Knoll Law Firm no longer represented McGill, they had no authority to disburse settlement funds. This was the duty of McGill's attorney, Vincent DeSalvo. At the time of settlement, Don's Pharmasave was one third party whose right to be protected and paid was authorized by McGill in the contract with the Knoll Law Firm. The Knoll Law Firm was responsible to Don's Pharmasave and paid same, although the ultimate responsibility was McGill's. The Don's Pharmasave bill should have been paid in full from the funds received by McGill. DeSalvo did protect the interest of the Knoll Law Firm by paying Huey P. Long Hospital (although Notice of Lien had been filed) and Dr. Darron McCann. (No such Lien). Clearly DeSalvo would have protected the Knoll's obligation to Don's Pharmasave had DeSalvo verified the total amount of charges incurred by McGill. Again, for the third time, in the opinion of this Court, this is a mistake either by DeSalvo or by Don's Pharmasave, or both.

DeSalvo had received information from the Knoll Law Firm that McGill had incurred charges with Don's prior to his assuming representation of McGill. In preparation for McGill's Trial, the entire bill was not obtained and not put into evidence. DeSalvo also had confirmation as to the amount of the bill incurred by McGill during their representation. DeSalvo had a duty to verify the account with Don's Pharmasave. This did not occur. DeSalvo is clearly responsible to the Knoll Law Firm for their payment to Don's Pharmasave in the amount of $1,159.59.

It is undisputed that Mr. DeSalvo's client, Mr. McGill, while he was represented by The Knoll Firm, incurred charges for his medication at Don's Pharmasave between the dates of 07/15/11-07/10/12 in the amount of $1,159.59. It

is also undisputed that Mr. McGill, while he was represented by Mr. DeSalvo, incurred charges for his medication at Don's Pharmasave between the dates of 9/14/12-10/23/12 in the amount of $149.50.

The documentation submitted into evidence at trial also demonstrated that Don's Pharmasave had two separate accounts in the name of Erick McGill, one under the name of The Knoll Firm and one under the name of Mr. DeSalvo. Thus, when Mr. DeSalvo's office called to verify the outstanding pharmaceutical charges, he claimed he was only given the charges listed under his name. Mr. DeSalvo testified at trial that he was unaware of the outstanding charges under The Knoll Firm account at Don's Pharmasave.

However, a review of the record, which included the documents submitted into evidence by The Knoll Firm, demonstrate that Mr. DeSalvo most certainly should have been aware of the outstanding balance of $1,159.59 at Don's Pharmasave. Mr. DeSalvo was apprised of this outstanding balance both at the beginning of his representation of Mr. McGill, when The Knoll Firm sent the entire Medical Packet on August 22, 2012, and again just prior to trial on June 24, 2014, when The Knoll Firm sent, at Mr. DeSalvo's request, a detailed list of their expenses associated with the representation of Mr. McGill.

We agree with the trial court that the failure of Don's Pharmasave to perfect a lien pursuant to La.R.S. 9:4752 and La.R.S. 9:4753 does not negate Mr. DeSalvo's duty to reimburse The Knoll Firm for their payment of Mr. McGill's pharmaceutical bill. Mr. DeSalvo paid the bill of Dr. Darron McCann in the amount of $2,941.90, without the necessity of Dr. McCann's filing a lien. As previously discussed, the original correspondence from Mr. DeSalvo dated August 22, 2012, provided that Mr. DeSalvo agreed to protect the expenses of The Knoll

Firm in the ongoing litigation, and stated, "Of course, I will protect any expenses you have in this matter and will be more than happy to discuss an amicable resolution of the fee with you[.]"  The record is clear that the $1,159.59 owed to Don's Pharmasave by The Knoll Firm for Mr. McGill was part and parcel of the expenses contemplated between the parties in the August 22, 2012 correspondence.

Moreover, on August 22, 2012, The Knoll Firm had filed a lien in the Mortgage Records of Avoyelles Parish, to which was attached The Knoll Firm's July 15, 2011 contract to hire attorney, signed by Mr. McGill.  The trial court correctly found:

> In the contract to hire attorney executed by McGill on July 15, 2011[,] with the Knoll Law Firm, this contract provides that the client authorizes the attorney to deduct and pay medical expenses of this claim from their recovery directly to the person, firms or entity to whom the expenses are due.  Due to the fact that the Knoll Law Firm no longer represented McGill, they had no authority to disburse settlement funds.  This was the duty of McGill's attorney, Vincent DeSalvo.  At the time of settlement, Don's Pharmasave was one third party whose right to be protected and paid was authorized by McGill in the contract with the Knoll Law Firm.  The Knoll Law Firm was responsible to Don's Pharmasave and paid same, although the ultimate responsibility was McGill's.

The trial court had the primary responsibility to determine credibility.  The court obviously found Mr. Knoll's testimony to be credible and fully corroborated by the documentary evidence filed in support thereof.  Therefore, after a thorough review of the record, we affirm the June 16, 2015 judgment of the trial court in its entirety, finding no manifest error in the trial court's ruling.

## CONCLUSION

Based on the foregoing, we affirm the June 16, 2015 final judgment of the trial court in favor of The Knoll Law Firm LLC and against Vincent J. DeSalvo ordering him to pay the sum of $1,159.59 with legal interest from the date of

10

judicial demand and all costs.   Costs of this appeal are assessed to Vincent J. DeSalvo.

**AFFIRMED.**