| STEPHANIE BANEGAS LOPEZ AND DANIS LOPEZ | * | NO. 2025-CA-0126 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| KAILEY GOERLITZ AND FARMERS INSURANCE EXCHANGE | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-04410, DIVISION "E"
Honorable Omar Mason
* * * * * *
**Judge Monique G. Morial**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Karen K. Herman, Judge Monique G. Morial)

Robert Joseph Daigre
Cesar Roberto Burgos
George M. McGregor
William R. Penton
Leila M. Bonilla
N. Blake Peters
Colin Leonard
BURGOS DAIGRE & MCGREGOR, LLC
3535 Canal Street
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFF/APPELLEE

Timothy G. Schafer
SCHAFER & SCHAFER
328 Lafayette Street
New Orleans, LA 70130

      COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**OCTOBER 14, 2025**

This litigation arises out of a motor vehicle accident. Defendants-Appellants, Kailey Goerlitz and Farmers Insurance Company, appeal the district court's October 11, 2025 judgement consistent with a jury verdict rendered following a three-day jury trial. For the following reasons, we affirm.

**PROCEDURAL BACKGROUND**

On May 18, 2022, Plaintiffs, Stephanie Banegas Lopez ("Ms. Banegas") and Danis Lopez ("Ms. Lopez"), filed suit in the Civil District Court for the Parish of Orleans against defendant-driver Kailey Goerlitz ("Ms. Goerlitz") and her insurer, Farmers Insurance Company ("Farmers"), for damages arising out of a December 9, 2021 motor vehicle accident at the intersection of St. Charles and Jefferson Avenues. Following a three-day jury trial, the jury returned a verdict in favor of Plaintiffs, finding Ms. Goerlitz 100% at fault in the accident.[1] On October 11, 2024, the district court judge issued a judgment consistent with the jury verdict against Defendants and in favor of Plaintiffs in the amount of $431,857.14,

---

[1] On September 12, 2023, Defendants filed a motion for summary judgment, which the district court denied.

1

awarding $367,922.14 to Ms. Banegas and $63,935.00 to Ms. Lopez, in addition to judicial interest. On October 21, 2024, Defendants filed a motion for a judgment notwithstanding the verdict and, in the alternative, a new trial. On December 30, 2024, the district court judge denied both motions. This timely appeal followed.

**FACTS**

At trial, Ms. Banegas testified that she was involved in a motor vehicle accident at the intersection of Jefferson and St. Charles Avenues on December 9, 2021. She testified that she lived in the Uptown area and was familiar with the intersection where the accident occurred. Ms. Banegas testified that she was driving in a northerly direction on Jefferson Avenue—which consists of two, one-lane roadways on each side of a median or neutral ground divider—away from Magazine St. and toward St. Charles Ave. As she approached St. Charles Ave., she stopped her vehicle on the streetcar tracks in order to make a left turn onto St. Charles Ave. She testified there were no vehicles in front of her, however, there was significant traffic on the opposite side of Jefferson Ave. traveling toward Magazine St. She explained that there was a "long line" of vehicles backed up on Jefferson Ave. traveling in the opposite direction and that the traffic was backed up behind the St. Charles Ave. traffic light. She testified there was a car stopped at the streetcar tracks traveling the opposite direction, waiting to make a left turn from Jefferson Ave. onto St. Charles toward downtown, and that there was a second vehicle behind it that was stopped on Jefferson Ave. right before the sidewalk on St. Charles Ave. Ms. Banegas testified that the position of those two stopped

2

vehicles allowed for St. Charles Ave. to be "completely empty" and allowed sufficient space for her to make a left turn onto St. Charles Ave. She testified that as she made the left turn, she felt the impact but had "no idea where [the other vehicle] came from." Ms. Banegas testified that after the accident, she was in a state of "shock" and was very worried about her mother, Ms. Lopez, who was in excruciating pain. When asked if she wanted to be taken to the hospital by ambulance, she declined. She testified that she wanted her mother to go to the hospital, but her mother did not have health insurance and was concerned about the cost. Ms. Banegas testified that she began experiencing pain approximately two hours after the accident. She had contacted her employer, the law firm Burgos and Associates, to let the office know she would not be at work, and was advised to seek medical treatment.

Ms. Lopez testified[2] that on December 9, 2021, she was involved in a motor vehicle accident at the intersection of Jefferson and St. Charles Avenues. Ms. Lopez was a passenger in her daughter, Ms. Banegas', vehicle. Ms. Lopez testified that she was employed as a housekeeper and that, at the time of the accident, her daughter was driving to drop her off at a home on Saint Charles Avenue that she cleaned. She testified that her daughter was driving down Jefferson Ave. from Magazine Street and stopped to wait for traffic to pass in order to make a left turn onto St. Charles Ave. She stated that, at some point, a vehicle was stopped traveling the opposite direction on Jefferson Ave. and allowed Ms. Banegas' car to

---

[2] Ms. Lopez testified with the assistance of a court-appointed translator.

turn into the intersection onto St. Charles Ave. Ms. Lopez testified her daughter raised her hand to tell the stopped driver "thank you" for allowing her to turn.

Defendant, Ms. Goerlitz, testified that she was traveling south on Jefferson Ave. toward Magazine Street. As she approached St. Charles Ave., there were two vehicles—both small SUV-type vehicles—in front of her in her travel lane that were stopped and waiting to make a left turn onto St. Charles Ave toward downtown. She testified that one of the vehicles was near or at the street car tracks on St. Charles Ave. She explained that between that vehicle and the vehicle closest to/in front of her, there was a gap or space in which Plaintiff Ms. Banegas attempted to make a left turn onto St. Charles Ave.

When questioned whether she had to pass to the right of the vehicles in front of her, Ms. Goerlitz testified "I don't believe I had to go to the side," stating that she had an unobstructed path traveling on Jefferson Ave. After confronted with her deposition testimony, however, Ms. Goerlitz subsequently acknowledged that she may have had to "move a foot or two" to the right in order to get around the vehicle in front of her. However, she maintained at trial that, despite possibly moving "a foot or two" her travel lane was unobstructed and that she was traveling straight in the lane of travel with a green light.

Ms. Goerlitz testified that at the time of the accident, she estimated her speed to be approximately 10 to 15 miles per hour. She testified that her speed did not exceed 20 miles per hour because of relatively heavy morning traffic and a school zone speed limitation in that area.

4

Detective Darien Crochet with New Orleans Police Department testified that he was involved in the investigation at the scene of the accident. He testified that he was familiar with the intersection at issue and that while vehicles traveling down Jefferson Avenue taking a left can move over to allow other vehicles to travel straight, he assumed given the traffic that Ms. Goerlitz had to go "around" some vehicles in order to continue straight down Jefferson Ave. Detective Crochet initially testified that he did not recall Ms. Banegas or Ms. Lopez complaining of any injuries or reporting any concern of injuries at the scene of the accident. On cross-examination, however, Detective Crochet acknowledged that Ms. Banegas did report that her mother had injured her side but refused medical treatment on the scene.

Detective Crochet's body camera video was introduced into evidence at trial. The body cam video evidence introduced at trial reflects that Ms. Goerlitz reported to Detective Crochet that she was traveling down Jefferson Ave. toward Magazine St. with a green light and was unable to stop before making impact with Ms. Banegas' vehicle. The video evidence reflects that Ms. Goerlitz reported to Detective Crochet immediately after the accident that there was "all this traffic backed up" on Jefferson Avenue in her lane of travel.

Ms. Banegas reported to Detective Crochet immediately after the accident that she was attempting to turn left onto St. Charles Ave. when Ms. Goerlitz approached "speeding" into the intersection while traveling in or near the parking

5

lane on Jefferson Ave. in order to pass the traffic stopped on Jefferson Ave. waiting to make a left turn onto St. Charles Ave. toward downtown.[3]

Dr. Gregory Hoffman, a board-certified orthopedic surgeon, was accepted as an expert and testified as to Ms. Banegas' injuries sustained as a result of the accident. Dr. Hoffman testified that he began treating Ms. Banegas in June of 2022 for complaints of shoulder and neck pain, which caused left arm pain and mobility limitations. He testified that Ms. Banegas previously treated with another physician for approximately six months with no progress, so he ordered an MRI of her left shoulder. The MRI showed a partial tear of her rotator cuff. He recommended that she continue physical therapy; however, after approximately one year of additional physical therapy was not successful to relieve her pain, Dr. Hoffman recommended shoulder surgery. On January 5, 2024, Dr. Hoffman performed the recommended shoulder surgery. Dr. Hoffman testified that Ms. Banegas could not return to work for several weeks, and was cleared to return to work duty on a limited basis on March 22, 2024. Dr. Hoffman testified to his opinion that Ms. Banegas' shoulder injury and subsequent surgery were caused by the accident at issue.

Dr. Timothy Kern, accepted as an expert in chiropractic medicine and treatment of patients involved in motor vehicle accidents, testified that he treated both Ms. Lopez and Ms. Banegas for injuries sustained from the accident at issue. He testified that Ms. Lopez treated with him from December 9, 2021 to June 15,

_____

[3] Photographs introduced into evidence at trial taken immediately after the accident at issue but prior to the responding officer's arrival reflect no vehicles parked in the parking lane on Jefferson Ave. in the direction Ms. Goerlitz traveled. Ms. Banegas testified to her opinion that the parking lane was empty leaving at least a 4 to 5 car length space for Ms. Goerlitz to travel through the designated parking lane. Additional still photographs from the body cam video evidence reflect that, upon the officer's arrival, a white truck with a trailer, with its hazard lights activated, had parked in the parking lane.

6

2022, for soft tissue injuries. Dr. Kern testified that Ms. Banegas reported she had been in a motor vehicle accident during which her left shoulder and side hit the vehicle door on impact. He testified that Ms. Banegas' injuries appeared more severe and that he recommended an MRI and ultimately referred her to an orthopedist. Dr. Kern testified that Ms. Banegas did report a prior June 2021 accident to him at her initial visit, but she indicated she had treated for soft tissue injuries primarily to her neck and that those injuries had resolved prior to the accident at issue.[4]

## LAW AND ANALYSIS

On appeal, Defendants challenge the jury verdict, contending that the jury erred in finding Ms. Banegas—a left-turning motorist—free from fault in the accident.[5] Defendants challenge only the jury's determination on the issue of liability and do not complain on appeal of the amount of damages awarded. Defendants contend that there is no reasonable factual basis upon which to find plaintiff-driver Ms. Banegas free from fault in this case given the evidence presented at trial.

This Court has recently set forth an appellate court's duty in reviewing a jury verdict on a determination of liability:

---

[4] Dr. Kern also testified to the prior accident. Dr. Kern testified that prior medical records show that Ms. Banegas was involved in a July 2021 motor vehicle accident and that on December 3, 2021, prior to the accident at issue in litigation, Ms. Banegas reported normal range of motion with no pain/difficulty and a 0/10 complaint of shoulder pain.

[5] Defendants challenge the jury's allocation of fault and list the following five assignments of error on appeal: (1) the jury erred in failing to apply the facts and law regarding the duties and breach thereof on the part of a left-turning motorist; (2) the jury failed to properly apply the facts to the burden imposed on a left-turning motorist to exonerate herself from fault; (3) the jury exonerated the left-turning motorist from any fault and imposed all fault on the right-of-way motorist on the basis of factual assumptions, which were not supported by any evidence; (4) the jury was manifestly erroneous in the application of presumptions, which were applied only to the defendant and not to the plaintiff; and (5) the jury erred in exonerating a left-turning motorist from fault contrary to the law deemed applicable in *Casimere v. Ryder Truck Rental, Inc.*, 324 So.2d 855 (La. App. 1975).

> A court of appeal may not set aside the jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993)(citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Snider v. Louisiana Med. Mut. Ins. Co.*, 14-1964, p. 5 (La. 5/5/15), 169 So.3d 319, 323. The appellate court must not re-weigh the evidence or substitute its own factual findings merely because it would have decided the case differently. *Id.* "[W]here there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong." *Serpas v. Tulane Univ. Hosp. & Clinic*, 13-1590, 13-1591, p. 13 (La. App. 4 Cir. 5/14/14), 161 So.3d 726, 736 (citing *Wallace v. Howell*, 09-1146, p. 2 (La. App. 4 Cir. 1/13/10), 30 So.3d 217, 218). Likewise, "[w]here the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." *Bellard v. American Central Ins. Co.*, 07-1335, p. 27 (La. 4/18/08), 980 So.2d 654,672.

*Barra v. Rayborn Trucking*, 22-0122, pp. 3-4 (La. App. 4 Cir. 12/16/22), 353 So.3d 1068, 1070-71.

A left-turning motorist involved in an accident is burdened with a presumption of liability and must show that she is free from negligence to overcome such burden. *Thonn v. Cook*, 03-0763, p. 4 (La. App. 4 Cir. 12/10/03), 863 So.2d 628, 633; *Ditcharo v. Allstate Ins. Co.,* 99-1873, p. 4 (La. App. 4 Cir. 11/8/00), 772 So.2d 928, 930; *Miller v. Leonard,* 588 So.2d 79, 81 (La. 1991). The burden rests heavily on the left-turning motorist to explain how the accident occurred and to show that she is free of negligence. *Thonn*, p. 4, 863 So.2d at 634.

Although a left turning motorist must overcome a presumption of liability, where the collision with the left turning motorist involves a passing motorist, the courts of this state likewise recognize that the passing motorist is also charged with an exceptional duty of care. *Taylor v. State Farm Mut. Auto Ins. Co.*, p. 5 (La. App. 3 Cir. 10/3/01), 796 So.2d 802, 806 (approvingly cited in *Thonn*, p. 23, 863

So.2d at 644-45). La. R.S. 32:74[6] provides that a driver may overtake or pass another vehicle on the right when the other vehicle is making or about to make a left turn. However, a vehicle may overtake or pass another vehicle on the right "only under conditions permitting such movement in safety." La. R.S. 32:74(B). Generally, the driver of an overtaking or passing vehicle has the duty to ascertain that from all the circumstances of traffic, lay of the land, and conditions of the roadway, the passing can be completed with safety. *Thonn*, p. 22, 863 So.2d at 644.

Due to the dangerous nature of their maneuvers, both the left-turning motorist and the overtaking or passing motorist are required to exercise a high degree of care. *Taylor*, pp. 4-5, 796 So.2d at 806 (quotations omitted).[7] Moreover, all motorists have a general duty to observe what should be observed. *Williams v.*

_____

[6] La. R.S. 32:74 controls a driver passing on the right of other vehicles and provides, in pertinent part:

> A. The driver of a vehicle may overtake and pass upon the right of another vehicle only under the following conditions
>
> (1) When the vehicle overtaken is making or about to make a left turn;
>
>         *     *     *
>
> B. The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety. In no event shall such movement be made by driving off the pavement or main traveled portion of the highway.

[7] On appeal, Defendants point to a 50-year-old case, *Casimere v. Ryder Truck Rental, Inc.*, 324 So.2d 855 (La. App. 1975). However, the *Casimere* case concerns the competing duties of a left-turning motorist and a right-of-way motorist. The case before us concerns the competing duties of a left-turning motorist and a "passing" motorist under La. R.S. 32:74. The *Casimere* case did not involve a motorist's duty to exercise care when passing a vehicle on the right and, thus, is not persuasive under the facts of this case. Nevertheless, in *Casimere*, this Court still considered the duty of a left turning motorist and "whether it was reasonable for the left-turning driver to proceed in the light of circumstances he should have observed in exercising the high degree of care required for this maneuver." *Casimere*, 324 So.2d at 864. This Court found that the left-turning motorist in *Casimere* should have seen the right-of-way vehicle prior to making the left turn and thus affirmed the jury determination that the left-turning motorist was 50% at fault for the accident. Applying that same inquiry in this case, we cannot say that the jury was clearly wrong in its factual determination that Ms. Banegas did in fact exercise a high degree of care in making the left turn at issue and was not responsible for the accident at issue.

*Leeper*, 21-1177, p. 3 (La. App. 1 Cir. 4/8/22), 341 So.3d 850, 854 (citing *Mart v. Hill,* 505 So.2d 1120, 1123 (La.1987)).

Considering the evidence and testimony presented at trial as set forth above, the jury may have reasonably accepted Ms. Banegas' version of the events leading up to the accident. The jury could have reasonably found that Ms. Banegas exercised extreme caution approaching the intersection, stopping and waiting for an appropriate opportunity to make her left turn when two vehicles traveling in the opposite direction were stopped in the one-lane roadway, allowing her sufficient space to carefully make her turn. The jury could have reasonably concluded that Ms. Banegas satisfied her burden to show that she exercised extreme caution as a left-turning motorist and overcame the presumption of liability. Conversely, the jury reasonably may have discredited Ms. Goerlitz's recollection of the accident at issue. Given her conflicting testimony concerning whether she in fact had to pass to the right of "all [the] traffic backed up" on Jefferson Ave. in her singular lane of travel, the jury could have reasonably concluded that Ms. Goerlitz in fact passed vehicle(s) on the right—either by traveling in the designated parking lane or passing the vehicle(s) within the singular lane of travel—and failed to exercise caution in passing on the right in order to travel across the St. Charles Ave. intersection. The jury may have concluded that Ms. Goerlitz—given her repeated testimony that she had the right-of-way and a green light without reference to any caution exercised or recognition of her duty as a passing motorist—failed to exercise caution and made an unsafe passing maneuver in "backed up" heavy morning traffic in order to traverse the intersection. It is within the province of the jury to weigh the evidence and assess the credibility of all witnesses in determining whether any party bears fault for an accident. *Barra,* p. 8, 353 So.3d at 1073.

10

Considering the evidence and testimony presented at trial, we cannot say that the jury was clearly wrong or manifestly erroneous in its factual determination that Ms. Goerlitz's negligence was the sole factor in causing the accident at issue.

**<u>DECREE</u>**

Accordingly, we affirm the district court judgment.

**AFFIRMED**