# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 07-737


## PATRICIA GOODWIN

## VERSUS

## DR. ERNESTO KUFOY, ET AL.


**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2006-1066
HONORABLE STUART S. KAY  JR., DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and J. David Painter, Judges.

## REVERSED IN PART, AFFIRMED IN PART.

**John E. Bergstedt**
**The Bergstedt Law Firm**
**P. O. Box 1884**
**Lake Charles, LA 70602**
**(337) 436-4600**
**Counsel for Defendant/Appellee:**
**Louisiana Medical Mutual Insurance Company**
**Dr. Ernesto Kufoy**

**Randall Scott Iles**
**Attorney at Law**
**P. O. Box 3385**
**Lafayette, LA 70502**
**(337) 234-8800**
**Counsel for Plaintiff/Appellant:**
**Patricia Goodwin**

**SAUNDERS, Judge.**

This is a medical malpractice case. An internist failed to successfully start a central line in order for the patient to receive her prescribed medication intravenously. During the attempts to start the central line, the internist made an indeterminate number of puncture wounds at four different sites on the patient's body.

The patient experienced pain during that night after the failed procedure, but her pain was managed successfully with medication and she sought no further treatment related to the unsuccessful procedure. The patient filed suit against the internist and a medical review panel was formed. The medical review panel's opinion was that the patient failed to show that the treating internist had breached the standard of care. The patient then brought her case to trial in district court.

The trial court found that the patient failed to establish the applicable standard of care, failed to prove that the internist had breached any standard of care, and failed to prove that she suffered any damages as a result of the unsuccessful procedure. The patient appealed alleging two assignments of error.

We reverse the trial court's finding that the patient failed to establish the applicable standard of care, reverse the trial court's finding that the patient failed to prove that the internist breached that standard of care, and affirm the trial court's finding that the patient failed to prove any damages as a result of the unsuccessful procedure.

**FACTS AND PROCEDURAL HISTORY:**

Patricia Goodwin (Goodwin) was a patient of Dr. Ernesto Kufoy (the defendant) since 1999. Goodwin presented to his clinic in early November 2003 with complaint of cough and congestion. Goodwin was a 57 year old woman, with a history of asthma, cirrhosis, high blood pressure, psoriasis, hypercholesterolemia,

hyperthyroidism, peptic ulcer disease and supra ventricular complexes.

The defendant treated her with a nebulizer treatment, a dexamethasone injection, a Rocephin injection, and prescriptions for Albuterol nebulizers and prednisone. Goodwin returned to the defendant's office on November 7, 2003, for continued cough and congestion. That day the defendant admitted Goodwin to Beauregard Memorial Hospital due to bilateral wheezes and poor air exchange.

The defendant began treating Goodwin via medication administered by a peripheral IV. Goodwin's peripheral IV infiltrated at noon on November 8, 2003. After successfully starting another peripheral IV, Goodwin began to complain that this new IV was causing her pain. The defendant then received consent from Goodwin to start a central line in order to ease the pain of her peripheral line and to complete the required treatment for her symptoms.

The defendant, despite attempts at four different locations with multiple tries at each location, was unsuccessful in starting a central line. Goodwin experienced pain, bruising and eventually some minor scarring at the locations where the defendant attempted to start the central line. Her pain subsided early the next morning with pain medication and Goodwin did not seek any further medical treatment for symptoms related to the failed procedure.

Goodwin filed suit against the defendant on April 7, 2004. Her claims were submitted to a medical review panel. The panel opined that the evidence did not support the conclusion that the defendant failed to comply with the appropriate standard of care as charged in the complaint. On November 21, 2005, Goodwin filed this suit alleging that the defendant breached the standard of care due by failing to consult with an expert after excessive unsuccessful efforts to start a central line.

Goodwin alleged that she experienced physical pain and suffering as a result of the multiple puncture wounds.

After a bench trial on February 6, 2007, the trial court ruled that Goodwin failed to prove the applicable standard of care, ruled that Goodwin failed to prove that there was no breach of the standard of care, and ruled that Goodwin experienced no discomfort and bruising that was unusual or unexpected, even in a successful central line insertion. Goodwin appealed alleging two assignments of error and also requested that this court, if we felt the record was complete, review her damages.

We reverse the trial court's finding that Goodwin failed to establish the standard of care applicable to the case at bar and also reverse the trial court's finding that Goodwin did not prove that the defendant breached that standard of care. We grant Goodwin's request for this court to review the damages awarded her by the trial court. We affirm the trial court's finding as reasonable that Goodwin did not prove that she suffered any damages as a result of the defendant's failed attempts to start a central line. Each party will bear its own costs of this appeal.

**ASSIGNMENTS OF ERROR:**

1. Did the trial court err in finding that Patricia Goodwin failed to establish the standard of care for an internist unsuccessfully attempting to start a central line between twenty to forty occasions by proving through specialists in internal medicine and surgery that the standard of care is to obtain a consult if the procedure cannot be done under non-emergent circumstances after four or five puncture wounds?

2. Did the trial court err in finding that Patricia Goodwin did not prove a deviation of the standard of care for an internist when she demonstrated that an internal medicine specialist under non-emergent circumstances should consult a specialist if he is incapable of starting a central line after four or five occasions where the physician unsuccessfully attempted to start a central line between twenty and forty puncture wounds?

**ASSIGNMENT OF ERROR #1:**

3

Goodwin contends that the trial court erred in finding that she failed to establish the standard of care for an internist to obtain a consult from a specialist, if that internist cannot successfully start a central line in non-emergent circumstances after multiple puncture wounds. We agree.

Whether the plaintiff establishes the standard of care in a medical malpractice action is subject to the manifestly erroneous, clearly wrong standard of review. *Martin v. East Jefferson General Hosp.*, 582 So.2d 1272 (La.1991).

Louisiana Revised Statute 9:2794 states, in pertinent part, the following:

A.    In a medical malpractice action. . . the plaintiff shall have the burden of proving:

1.    The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians. . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians. . . with the involved medical specialty.

Therefore, according to La.R.S.9: 2794 (A) a medical malpractice claimant must establish the defendant's standard of care by a preponderance of the evidence. *Newsome v. Lake Charles Memorial Hosp.*, 06-1468 (La.App. 3 Cir. 4/4/07), 954 So.2d 380.

After reviewing the record, we find that there is no reasonable basis for the trial court's finding that Goodwin did not establish the applicable standard of care. Dr. Patrick Griffith, an internist such as the defendant in a similar community or locale, testified to the following:

Q:    Okay. As a general rule, do you know as an internal medicine specialist what the rule would be how many punctures a physician

4

would in a standard of care situation attempt to start a puncture on the patient, trying to begin a central line before that physician consult - - should consult a surgeon? Is there a number in your mind where you think at this point a surgeon should be consulted? Is there a number in your mind where you think at this point a surgeon should be consulted?

A: The situation varies. I guess if there's a surgeon available, I mean, I guess after six, seven attempts, if a surgeon was available. And I - - I throw that number out there. I've never been able to find - - I haven't been able to find any studies that say this x number of - - I've seen a few studies where they say five or six attempts, you increase your risk of complications.

The trial court interpreted the testimony above to mean that any number stated by Dr. Griffith was a guess. We disagree. Later in his testimony, Dr. Griffith clearly iterated that any number of puncture wounds over seven would be below the standard of care the following exchange took place:

Q: If a doctor, in fact, is attempting to start a central line, and if unsuccessful after a period of time, whether the number [of puncture wounds] is eight or 20 or 40, any number like that, but runs into a situation where he is unsuccessful in starting that central line, is it not within the standard of care for an internal medicine specialist at that point to consult with someone who has the capability and the specialty such as a surgeon to start that line?

A: Yes.

In its reasons for judgment dictating why it found that Goodwin failed to establish the standard of care, the trial court gave great weight to the testimony of Dr. David Brown. The trial court's reliance on Dr. Brown's testimony as evidence of Goodwin failing to establish a standard of care is clearly wrong. First, Dr. Brown is a surgeon, not an internist. The standard of care that Goodwin need establish *sub judice* is not the standard for a surgeon in starting a central line, but the standard for an internist in starting a central line. Second, the trial court noted that Dr. Brown testified to having stuck people more than 3 or 4 or 5 times when necessary.

5

However, the trial court fails to note that Dr. Brown goes on to testify, "I have stuck people more than three or four or five times. But given our situation [as a surgeon], *there's nobody else to try. . . I'm the end of the chain. . .*" (Emphasis added.) In weighing Dr. Brown's testimony, it is clear that the trial court fails to fully consider the ramifications that Dr. Brown is a surgeon, rather than an internist.

According to the testimony of Dr. Griffith, a surgeon is one such speciality whom an internist should consult if that internist fails to start a central line after more than six or seven puncture wounds. Here, we have Dr. Griffith clearly stating the standard of care an internist owes to a patient under similar circumstances, and we have the defendant failing to put forth any evidence to contradict that standard given by Dr. Griffith. As such, there is no reasonable basis for the finding that Goodwin failed to establish the applicable standard of care. Accordingly, we reverse the trial court's ruling that Goodwin failed to establish the standard of care applicable to the case before us.

**ASSIGNMENT OF ERROR #2:**

In her second assignment of error Goodwin argues that the trial court erred in finding that she did not prove that the defendant deviated from the standard of care for the number of puncture wounds an internist should make while attempting to start a central line before he consults with a specialist. We concur.

Our Louisiana Supreme Court, in *Martin v. East Jefferson General Hosp.*, 582 So.2d 1272, 1276 (La.1991), stated the following:

> In a medical malpractice action against a physician, the plaintiff carries a two-fold burden of proof. The plaintiff must first establish by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and must then establish a causal relationship between the alleged negligent treatment and the injury sustained. Resolution of these

6

inquires are determinations of fact which should not be reversed on appeal absent manifest error. (Citations omitted.)

In the case before us, the defendant points out that no physician testified that he breached the standard of care and that the medical review panel found that the evidence does not support the conclusion that the defendant failed to comply with the appropriate standard of care as charged by Goodwin. These two points are accurate; however, Dr. Griffith, both a physician and a member of the medical review panel, testified that after seven puncture wounds result in a still unsuccessful attempt to start a central line, an internist should consult a specialist, such as a surgeon. Here, the defendant did not consult any specialist despite evidence that his attempts to start a central line on Goodwin resulted in more than seven puncture wounds.

The trial court, in its reasons for judgment, notes that it cannot determine the exact number of puncture wounds that were made in attempting to start the central line, therefore, it cannot say that the defendant's conduct fell below the standard of care. While it is true that an exact number of puncture wounds cannot be determined from the record, it is clear that the defendant's attempt to start the central line resulted in over seven puncture wounds.

Joan George, a registered nurse who was the charge nurse working on the date of the incident, testified that she saw Goodwin after the defendant attempted to start the central line. In her testimony, George stated that she counted greater than eight puncture wounds on Goodwin's left side, but did not finish counting because it seemed to distress the patient.

While George does not testify to an exact number, her testimony gives, at minimum, a number over the standard established by Dr. Griffith's testimony. Moreover, it is not disputed that the defendant attempted to start a central line

bilaterally, thus, given that George only counted the number of puncture wounds on Goodwin's left side, it is clear that George's testimony, indicates that the defendant breached the standard of care in this case.

Other evidence that tends to prove the defendant breached the standard of care was the testimony of Richanna Leonard and Jessica Ashworth, both LPN' s working at the hospital and both of whom saw Goodwin on the date of the incident. Leonard testified that she, didn't count, but, "I know she had at least 16 puncture wounds." Ashworth testified that Goodwin had at least 15 puncture wounds that she counted, but she stopped at 15and did not finish counting.

There is no number of puncture wounds noted in any of Goodwin's medical records. The only other evidence in the record alluding to the number of puncture wounds made by the defendant was his testimony. In his testimony, the defendant stated that he had no recollection of the number of puncture wounds he made in attempting to start the central line, but that he would never do 20 or 40 or 50.

In summation, the only evidence in the record of the number of puncture wounds that the defendant made to start a central line on Goodwin is that of nurses George (greater than 8 on half of Goodwin's body), Leonard (at least 16) and Ashworth (at least 15), and the proclamation by the defendant that he would never do 20. As such, the only conclusion that a reasonable trier of fact could make from the evidence presented was that the defendant made, at minimum, over seven puncture wounds on Goodwin. Given that the standard of care established by Dr. Griffith's testimony was an internist should not make over seven puncture wounds on a patient without consulting a specialist, we can only conclude that the trial court's determination that the defendant did not breach the standard of care he owed to

Goodwin was manifestly erroneous.

**DAMAGES:**

Goodwin asked in brief for this court to assess damages if it feels that the record is complete for that purpose. Given that Goodwin testified that she experienced no further pain after 4AM the day after the incident and Goodwin had no medical follow-up for symptoms stemming from the failed procedure, we find that the record is complete in this regard and will address the damages awarded in this case.

As was the case in the first two assignments of error, the standard of review is that of manifest error. The trial court found that the discomfort and bruising experienced by Goodwin from the procedure were not unusual or unexpected, even in successful central line insertions.

We cannot say that this finding is unreasonable. Goodwin signed a form saying that hemorrhaging and scarring are known risks to this procedure, even if it is successful. Dr. Brown testified that scarring is possible any time that a physician attempts to access any patient's blood vessels. Dr. Griffith testified that Goodwin experienced no bruising or pain that was not unusual for a patient that undergoes a successful insertion of a central line. The defendant testified that Good win did not experience any unexpected pain and that the pain and bruising she experienced were normal.

From this evidence in the record, a reasonable person could find that Goodwin experienced no more bruising, pain, or scarring than she would have otherwise endured even with a successful insertion of a central line. Accordingly, we affirm the trial court's finding that Goodwin experienced no damages as a result of the puncture wounds she suffered from the failed attempts to start a central line.

9

**CONCLUSION:**

Goodwin raised two assignments of error and, in brief, requested that this court, if we felt the record was complete, review her damages. We reverse the trial court's finding that Goodwin failed to establish the standard of care applicable to the case at bar and also reverse the trial court's finding that Goodwin did not prove that the defendant breached that standard of care. We grant Goodwin's request for this court to review the damages awarded her by the trial court. We affirm the trial court's finding that Goodwin did not prove that she suffered any damages as a result of the defendant's failed attempts to start a central line. Each party will bear its own costs of this appeal.

**REVERSED IN PART, AFFIRMED IN PART.**