# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-299


ALICIA DAWN MASON

VERSUS

ROBERT MASON


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 18,948
HONORABLE JOHN C. REEVES, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Billy Howard Ezell, Phyllis M. Keaty, and Van H. Kyzar, Judges.


**AFFIRMED.**

**Philip A. LeTard, Sr.**
**Attorney at Law**
**Post Office Box 187**
**Vidalia, Louisiana  71373**
**(318) 336-8990**
**Counsel for Defendant/Appellant:**
        **Robert Mason**

**Brandy McClure**
**Attorney at Law**
**Post Office Box 665**
**Jonesville, Louisiana  71343**
**(318) 339-7337**
**Counsel for Plaintiff/Appellee:**
        **Alicia Dawn Mason**

**KEATY, Judge.**

Former husband filed a motion to enforce a provision of his divorce judgment giving him a portion of his former wife's retirement. Former wife opposed the motion, arguing that they had entered into a subsequent oral agreement whereby former husband relinquished his interest in her retirement in exchange for her dismissal of an action against him to collect past-due child support. Following a hearing, the trial court rendered judgment denying former husband's motion. Former husband now appeals. Finding no manifest error in the trial court's ruling, we affirm.

## FACTS AND PROCEDURAL HISTORY

Robert Mason and Alicia Dawn Mason, now Alicia Dawn Ford (Ms. Ford), were married on August 24, 1979, and divorced on June 1, 1995. The two children born of the marriage were minors when their parents divorced. The divorce judgment ordered Mr. Mason to pay Ms. Ford child support in the amount of $150.00 per child per month and to reimburse Ms. Ford for one-half of the children's medical, dental, and medication bills not covered by the hospitalization insurance she maintained for them. The judgment further provided that Ms. Ford's retirement would be divided with Mr. Mason according to the formula set forth in *Sims v. Sims*, 358 So.2d 919 (La.1978).

On June 25, 2014, Mr. Mason filed a motion requesting that Ms. Ford be ordered to show cause why her retirement account should not be shared with him as per the terms of their judgment of divorce. A hearing on Mr. Mason's motion took place on March 7, 2016, at which time evidence was presented and the trial court heard the testimony of Ms. Ford; Ms. Ford's mother, Emma Jean Seal (Ms. Seal);[1]

---

[1] In the record and briefs to the court, Ms. Seal is sometimes referred to as Emmogene Seal. We refer to her herein as "Ms. Seal."

and Mr. Mason. By judgment dated June 3, 2016, the trial court denied Mr. Mason's motion, declaring that: "Mr. Mason is not entitled to any portion of Alicia Dawn Ford's retirement." Mr. Mason filed a motion for new trial, which the trial court denied after a hearing. Mr. Mason now appeals, asserting that the trial court erred: 1) in denying his claim to a portion of Ms. Ford's retirement benefits; 2) in accepting the testimony of Ms. Ford and Ms. Seal as proof that he and Ms. Ford entered into a subsequent and valid verbal agreement modifying their divorce judgment; and 3) "by not considering the unjust enrichment of such an agreement." Mr. Mason's first assigned error goes to the heart of this appeal and will be determined by considering the merits of his second and third assigned error.

## DISCUSSION

The trial court's factual findings will not be disturbed on appeal absent manifest error. Moreover, the trial court's reasonable evaluations of credibility and inferences of fact will not be disturbed on review, even though the appellate court may believe its own evaluations and inferences are as reasonable. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Monroe v. Physicians Behavioral Hosp., LLC*, 49,248 (La.App.2d Cir.8/13/14), 147 So.3d 787. The trial court reconciles conflicting evidence. The reviewing court does not determine whether the trial court was right or wrong, but whether its factual conclusions are reasonable in light of the record as a whole. *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993).

*Schindler Elevator Corp. v. Long Prop. Holdings, L.L.C.*, 50,199, pp. 11-12 (La.App. 2 Cir. 11/18/15), 182 So.3d 233, 240.

When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

*Rosell*, 549 So.2d at 844. The Louisiana Supreme Court has gone so far as to declare that "[w]here the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be

manifestly erroneous." *Snider v. La. Med. Mut. Ins. Co.*, 14-1964, p. 5 (La. 5/5/15), 169 So.3d 319, 323.

Louisiana Civil Code Article 1848 provides as follows:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement.

"Whether an oral agreement modified a written contract is a question of fact. The party asserting modification must prove by a preponderance of the evidence the facts or acts that gave rise to the modification." *Schindler*, 182 So.3d at 241 (citations omitted). "Parties are free to contract for any object that is lawful, possible, and determined or determinable." La.Civ.Code art. 1971. "It is not the province of the courts to relieve a party of a bad bargain, no matter how harsh." *La. Power & Light Co. v. Mecom*, 357 So.2d 596, 598 (La.App. 1 Cir. 1978).

Based on the foregoing principles, we must decide whether the trial court manifestly erred in finding that Ms. Ford met her burden of proving that she and Mr. Mason entered into an oral agreement whereby he relinquished his right to collect a portion of her retirement as set out in their divorce judgment. Ms. Ford's retirement account was unquestionably an asset of their former community that was subject to division upon the dissolution of their marriage. This principle was noted in their divorce judgment. Thus, Mr. Mason is entitled to receive a portion of that account unless he waived that right. The parties do not dispute that they came to an agreement in 2005 prompted by Mr. Mason's request that Ms. Ford drop the action pending against him for past-due child support.[2] They also do not dispute that the

---

[2] The record indicates that Mr. Mason's child support obligation for the parties' daughter ended in 1999, and his obligation for their son ended in 2001. Nevertheless, Mr. Mason acknowledged that he owed child support arrearages when Ms. Ford signed the Request for Closure on September 9, 2005.

3

agreement was not put in writing. The primary point of contention, however, is what consideration Mr. Mason agreed to give Ms. Ford in exchange for her assent to his request. Mr. Mason contends that Ms. Ford agreed to drop the child support action in exchange for him giving her $1,500.00 cash on the spot. Ms. Ford, on the other hand, insists that she did not accept Mr. Mason's proposal until he agreed to waive his right to receive a share of her retirement.

At Mr. Mason's request, Ms. Seal was sequestered at the start of the March 7, 2016 hearing. The first witness to testify was Ms. Ford. Ms. Ford explained that because Mr. Mason did not pay her "a penny" of child support for over a year after their divorce, she had to seek enforcement of the child support awarded her in the divorce judgment. Thereafter, Mr. Mason began paying her between $50.00 and $100.00 per month, but never the full amount that he was ordered to pay her. Ms. Ford stated that Mr. Mason came to her house in the summer of 2005 because he wanted to purchase something but was unable to secure a loan because "the child support was looming on his credit report." According to Ms. Ford, Mr. Mason asked her if she would waive any child support that he owed her if he would "relinquish any rights to any monies" from her, including her retirement. She denied that Mr. Mason offered to pay her $1,500.00 as part of their agreement. She accepted his verbal offer and approximately one month later, on September 20, 2005, she signed a Request for Closure that dismissed the child support case against Mr. Mason and deleted any arrearages that he then owed.[3] The form did not list the amount of child support Mr. Mason owed at the time. Ms. Ford initially testified that the child support arrearages totaled in excess of $7,000.00, but she later clarified that some of that amount was for medical bills. Ms. Ford stated that her mother,

---

[3] The Request for Closure was entered into evidence at the hearing.

4

Ms. Seal, was at her house and heard the oral agreement that she made with Mr. Mason.

Ms. Ford explained that she had worked as a registered nurse since 1980 and that she contributed twenty-five years of retirement benefits. She stated that she had not retired and, thus, was not receiving retirement benefits when the agreement was confected in 2005. According to Ms. Ford, she and Mr. Mason did not discuss how much her retirement was worth when reaching the oral agreement in 2005. Ms. Ford acknowledged that the Request for Closure did not reflect that Mr. Mason was giving up his interest in her retirement. She stated that in hindsight, however, she should have noted that fact on the form. Ms. Ford stated that she began collecting retirement benefits in June 2007, in the amount of approximately $2,700.00 per month.[4]

Ms. Seal was the second witness to testify at the hearing. Ms. Seal stated that she had always gotten along well with her former son-in-law, Mr. Mason. Ms. Seal explained that one day when she was at her daughter's house in 2005, Mr. Mason came in to ask Ms. Ford if she would drop the child support case against him so that he could get a loan. According to Ms. Seal, her daughter initially told Mr. Mason "No," but she changed her mind after he agreed "not to fool with her retirement." Ms. Seal said that Ms. Ford and Mr. Mason did not discuss how much money he owed in child support at that time, and she did not recall Mr. Mason offering her daughter $1,500.00 as part of the agreement.

Mr. Mason testified that he went to Ms. Ford's house in 2005 to see if she would waive the child support he owed her, which he estimated to be about $2,000.00 at the time. According to Mr. Mason, he offered to pay Ms. Ford $1,500.00 in cash or $20.00 per month. He said Ms. Ford laughed at first, but then

_____

[4] In conjunction with her testimony, Ms. Ford entered into the record a document outlining her retirement benefits that was issued in July 2007.

accepted $1,500.00 in cash and went with him to the courthouse that day to sign the papers dismissing the child support case. Mr. Mason claimed that he got a receipt for the money he gave Ms. Ford but that he had lost it. He denied that he and Ms. Ford discussed her retirement or that he agreed to give up his right to collect a portion of her retirement as part of the oral agreement that they reached. Mr. Mason acknowledged that he owed Ms. Ford back child support in the years between their divorce and when they made the oral agreement in 2005. When asked whether he paid for one-half of his children's medical and dental bills since their divorce, Mr. Mason answered, "I don't remember."

At the close of the hearing, the trial court accepted into evidence a Show Cause Summons (the Summons) directed to Mr. Mason that was signed on September 19, 2000. The Summons indicated that in lieu of serving six months in jail, Mr. Mason had been placed on supervised probation for five years in September 1998 by the Support Enforcement division of the Louisiana Department of Social Services.[5] According to the Summons, Mr. Mason owed $6,102.00 in arrearages at that time, the last payment of $160.00 having been received in November 1999. Ms. Ford filed a post-hearing memorandum, to which she attached an affidavit dated March 31, 2016, wherein she attested that Mr. Mason owed $2,562.00 in past-due child support when she dismissed the child support case against him. She further attested that Mr. Mason owed her $6,178.58 for his portion of their minor children's medical expenses that were not covered by insurance. Finally, Ms. Ford attested that she and Mr. Mason agreed that she would dismiss any claim for past-due child support and medical expenses and that Mr. Mason would waive any right to her

---

[5] As part of his probation, Mr. Mason was ordered to pay a $500.00 fine, $150.00 per month in child support, and $10.00 in arrearages starting on October 1, 1998. He was also ordered to notify his probation officer of any changes within ten days.

retirement. Although Mr. Mason told the trial court that he would supplement the record with certified copies of the history of his child support payments on record with Louisiana Automated Support Enforcement System (LASES) for the years 2002 to 2005, we have found no such supplementation in the record.

### *Did Ms. Ford Prove a Subsequent Oral Agreement Modified Their Divorce Judgment?*

On appeal, Mr. Mason argues that the truthfulness of Ms. Ford's and Ms. Seal's testimonies should be called into question because they both answered affirmatively when asked by his attorney whether they thought it was unfair for Mr. Mason to have any interest in Ms. Ford's retirement. Mr. Mason insists that his interest in Ms. Ford's retirement was not discussed at their 2005 meeting. He acknowledges that Ms. Ford and Ms. Seal both testified that he agreed to forfeit his rights to Ms. Ford's retirement in exchange for her agreeing to forgive the child support arrearages that he owed. Nevertheless, he argues that he was aware of the fact that the value of his interest in Ms. Ford's retirement account in 2005 greatly exceeded the amount of child support he owed at the time and that he would not have agreed to such an unfair tradeoff. Thus, he submits that the trial court should have credited his testimony that Ms. Ford agreed to dismiss the child support case against him after he paid her $1,500.00.

Ms. Ford counters, noting that despite the fact that her mother was sequestered at the hearing, they both testified that Mr. Mason came to Ms. Ford's house in 2005 because he could not get a loan because of the child support case against him. They, likewise, testified that Ms. Ford would not accept Mr. Mason's request until he agreed to waive his right to collect a portion of her retirement. Moreover, neither Ms. Ford nor Ms. Seal recalled Mr. Mason giving Ms. Ford a cash payment as part of the 2005 verbal agreement.

The trial court heard conflicting testimony regarding the terms of the oral agreement Mr. Mason and Ms. Ford entered into in 2005. It was able to observe the witnesses' demeanors and to assess their credibility. In addition, Ms. Ford provided the trial court with several exhibits to assist in its determination of the facts. Historically, Mr. Mason was unable and/or unwilling to keep current on his child support obligations. Because credibility determinations are left to the fact finder, the trial court was free to accept Ms. Ford's version of the facts and to reject the conflicting version presented by Mr. Mason. In view of the record as a whole, we cannot say that the trial court manifestly erred in accepting the testimonies of Ms. Ford and Ms. Seal as proof that Ms. Ford and Mr. Mason entered into a valid subsequent verbal agreement modifying their divorce judgment.

Mr. Mason's second assigned error lacks merit.

### *Unjust Enrichment*

Mr. Mason next argues that even if the version of the 2005 agreement attested to by Ms. Ford and her mother were true, enforcement of the 2005 agreement results in an unjust enrichment to Ms. Ford and an impoverishment to him. As he testified to at the hearing and as he reiterates in brief to this court, Mr. Mason's health has declined since his divorce from Ms. Ford. He has had several surgeries, and he is no longer able to work as a wallpaper hanger and painter because of heart problems, a torn rotator cuff, and arthritis. According to his calculation of the *Sims* formula, Mr. Mason claims that he is entitled to receive at least $50,000.00 in benefits from Ms. Ford's retirement. As a result, he submits that it would be unconscionable to enforce an agreement whereby he waived $50,000.00 in exchange for Ms. Ford agreeing to not collect $8,740.58 in child support and medical bill arrearages from him.

Ms. Ford insists that Mr. Mason has miscalculated the amount of retirement benefits that he would stand to recover from Ms. Ford in the absence of their 2005 oral agreement. Her calculation of the *Sims* formula shows that Mr. Mason would be entitled to recover $19,879.89 of her retirement benefits. Thus, after subtracting the $8,740.58 in past due child support and medical bills that Mr. Mason owed her at the time they entered into the oral agreement, the amount Mr. Mason gave up was approximately $11,139.31.[6] Given the fact that her dismissal of the child support case against Mr. Mason improved his financial position and allowed him to obtain the credit he desired, Ms. Ford argues that she was not unjustly enriched by their 2005 verbal agreement.

At the hearing before the trial court, Mr. Mason argued that he and Ms. Ford did not discuss her retirement when they reached the oral agreement in 2005. The trial court found to the contrary, and we have ruled that such finding was not manifestly erroneous. Now, on appeal, Mr. Mason would have this court look at his current medical and financial conditions and the current value of Ms. Ford's retirement account. In fact, at the hearing on Mr. Mason's motion for new trial, his attorney commented that because Mr. Mason "had no idea how long [Ms. Ford] was going to work[, he] couldn't figure out exactly what Mr. Mason's value in the retirement was until she stopped working."

Louisiana Civil Code Article 2298, titled "Enrichment without cause; compensation," provides in pertinent part as follows: "A person who has been enriched without cause at the expense of another person is bound to compensate that person." We have searched the record and can find no evidence that Mr. Mason pled

---

[6] In her brief to this court, Ms. Ford claims that she waived $12,000.00 in past-due child support and medical bills. We find it more appropriate to use the figure of $8,740.58 that results from the amounts noted in her March 31, 2016 affidavit.

or argued his theory of unjust enrichment to the trial court. Rather, he argued at the March 7, 2016 hearing that it would be "unconscionable for him to be stripped entirely of his right of this support." "This court will not consider an issue raised for the first time on appeal." *Burch v. Burch*, 51,780, p. 9 (La.App. 2 Cir. 1/10/18), 245 So.3d 1138, 1143.

In finding that Mr. Mason waived his rights to Ms. Ford's retirement, the trial court implicitly found that Mr. Mason had "cause" to enter into the 2005 oral agreement. Mr. Mason would have this court invalidate an agreement into which he willingly entered in 2005 based upon the circumstances that then existed, but which now, in hindsight, may not have been to his advantage. *La. Power & Light Co. v. Mecom*, 357 So.2d 596 (La.App. 1 Cir. 1978). In our view, Mr. Mason raised his unjust enrichment argument as an afterthought. Because Mr. Mason did not present the issue of whether enforcement of the 2005 oral agreement resulted in an unjust enrichment to Ms. Ford at his expense, we will not consider this issue on appeal.

**DECREE**

For the foregoing reasons, the trial court judgment is affirmed. All costs of this appeal are assessed against Appellant, Robert Mason.

**AFFIRMED**.