# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 22-78


PATRICIA GOFF AND MARK GOFF

VERSUS

DR. ROBIN L. YUE


**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2016-0170-B
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

**********

**GARY J. ORTEGO**
**JUDGE**

**********

Court composed of Billy Howard Ezell, Jonathan W. Perry, and Gary J. Ortego, Judges.


**AFFIRMED, IN PART; REVERSED, IN PART; AND RENDERED.**

**Randall Louis Champagne**
**Watson, Blanche, Wilson**
**505 North Boulevard**
**Baton Rouge, LA 70802**
**(225) 387-5511**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Dr. Robin L. Yue**

**John Layne Hammons**
**Cornell R. Flournoy**
**William W. Murray, Jr.**
**R. Clayton Christian**
**Nelson & Hammons**
**315 South College Rd, Ste 146**
**Lafayette, LA 70503**
**(337) 534-0515**
**COUNSEL FOR PLAINTIFF/APPELLANTS:**
    **Patricia Goff**
    **Mark Goff**

**Steven Wyckoff Harris**
**Harris Law Firm**
**4407 Parliament Drvie**
**Alexandria, La 71315-3701**
**(318) 487-1978**
**COUNSEL FOR PLAINTIFF/APPELLANTS:**
    **Patricia Goff**
    **Mark Goff**

**Robert Warren Robison, Jr.**
**Shelby G. LaPlank**
**Watson, Blanche, Wilson**
**505 North Boulevard**
**Baton Rouge, LA 70821-2995**
**(225) 387-5511**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Dr. Robin L. Yue**

**ORTEGO, Judge.**

In this medical malpractice case, the Plaintiffs allege multiple acts of substandard care by Patricia Goff's (Mrs. Goff) cardiologist related to care administered due to heart attacks suffered on August 5, 2013, and August 6, 2013.

After conducting the proper review, we find manifest error in part of the trial court's judgment. As such, we reverse, in part, the judgment of the trial court and render judgment in favor of the plaintiffs.

**FACTS AND PROCEDURAL HISTORY**

On August 2, 2013, Mrs. Goff was seen in the Emergency Room at Beauregard Memorial Hospital with complaints of chest pain and tightness. The medical records of this visit, not at issue in this case, indicate that Mrs. Goff's symptoms were attributed to anxiety. She was discharged with a prescription for anxiety medication.

On August 5, 2013, Mrs. Goff returned to Beauregard Memorial Hospital around 6:30AM, again complaining of moderate to severe chest pain and tightness. Mrs. Goff had significant medical history of prior myocardial infarction with stent placement in 2010.

That morning, Dr. Robin Yue (Dr. Yue), the defendant in this matter, performed an electrocardiogram (ECG)[1] on Mrs. Goff. Dr. Yue determined that the ECG, while abnormal, did not have sufficient ST-elevation for a diagnosis of a STEMI.[2] A STEMI diagnosis would have required that Mrs. Goff be immediately

---

[1] "ECG" and "EKG" are used interchangeably by different testimonies in the record to refer to an electrocardiogram.

[2] An ST-elevation Myocardial Infarction (STEMI) is a type of heart attack that is more serious and has a greater risk of serious complications and death due to blockage of one of the heart's major arteries.

transferred to a facility other than Beauregard Memorial Hospital which can handle the proper treatment of a patient with a STEMI.

Soon after arrival, Mrs. Goff's blood was tested for troponin, a biomarker, when present at certain levels in the blood, is indicative of dying heart muscle. Her initial test was negative, but a second test, performed approximately four hours later was positive.

On the morning of August 6, 2013, Mrs. Goff underwent a second ECG. This ECG resulted in tracings showing ST-elevation. Further, a third test for troponin was indicative that Mrs. Goff indeed had suffered a STEMI the day before.

Dr. Yue, having reviewed the ECG tracings and troponin tests, contacted Rapides Regional Medical Center to have Mrs. Goff transferred there to receive appropriate care for a patient who had suffered a STEMI. After Rapides Regional Medical Center accepted Mrs. Goff as a patient, there was some difficulty finding an ambulance to provide transportation, so she was airlifted. After arrival at Rapides Regional Medical Center, Mrs. Goff was treated by Dr. Jaffrani. According to the undisputed evidence before the court, Mrs. Goff suffered a loss of quality of life and diminished life expectancy due to her cardiac related medical situations present on August 5 and August 6, 2013.

On February 24, 2016, Patricia and Mark Goff (the Goffs) filed a medical malpractice suit against Dr. Yue. In that suit, the Goffs alleged that Dr. Yue's failure to recognize Mrs. Goff's STEMI on August 5, 2013, was below the standard of care and resulted in damages to them.

Per the Louisiana Medical Malpractice Act, the case was sent to a medical review panel. La.R.S. 40:1299.47. The panel found that Dr. Yue's treatment of Mrs. Goff did not breach the standard of care.

Thereafter, a bench trial was held on this matter and a judgment was rendered on September 16, 2021, in favor of Dr. Yue finding that the Goffs failed to prove by a preponderance of the evidence that Dr. Yue committed medical malpractice in his treatment of Mrs. Goff on August 5, 2013, and August 6, 2013. Deviating from the general rule regarding court costs, the trial court ordered that Dr. Yue pay the court costs "considering the closeness of the evidence in this matter."

The Goffs appeal this judgment, assigning the following four errors:

## ASSIGNMENTS OF ERROR

1.    In [the trial court's] reasons for concluding that Dr. Yue did not commit medical malpractice by failing to diagnose and treat Mrs. Goff's STEMI on August 5, 2013, the [t]rial [c]ourt committed manifest error in failing to even mention Dr. Yue's own testimony much less address the significance of Dr. Yue's judicial confessions.

2.    In [the trial court's] reasons for concluding that Dr. Yue did not commit medical malpractice by failing to diagnose and treat Mrs. Goff's STEMI on August 6, 2013, the [t]rial [c]ourt committed manifest error in failing to even mention Dr. Yue's own testimony much less address the significance of Dr. Yue's judicial confessions.

3.    The [t]rial [c]ourt committed manifest error in concluding that Dr. Yue provided medical care to Mrs. Goff in accordance with applicable medical standards.

4.    The [t]rial [c]ourt erred, as a matter of law, in concluding that Mr. and Mrs. Goff "should not be allowed to recover from two damage caps under the Louisiana Medical Malpractice Act."

## LAW AND DISCUSSION

*I.    Preliminary Matter: Evidence Admitted at Trial*

For the first time during oral argument, counsel for Dr. Yue raised the issue of whether the Goffs had properly entered the evidence they cite in attempting to carry their burden of proof in this case. We will not address this issue based on longstanding jurisprudence that appellate courts will not consider an issue raised for

the first time on appeal when the issue was not pled or raised in the court below, and which the lower court has not addressed. *Dean v. Southmark Const.*, 03-1051 (La. 7/6/04), 879 So.2d 112; *Mason v. Mason*, 18-299 (La.App. 3 Cir. 11/7/18), 260 So.3d 609.

We further note that the trial record reflects that a joint trial notebook was properly admitted by the trial court at the beginning of trial. That trial notebook is comprised of over two thousand pages and includes, inter alia., deposition testimony and/or medical records of each expert that expressed their opinion in this case.

## II.    Standard of Review

An appellate court reviews the factual findings of a trial court under the manifest error-clearly wrong standard of review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The two-part test in reviewing a fact finder's determination is (1) whether a reasonable, factual basis exists in the record for the determination and (2) whether the determination is clearly wrong as established by the record. *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). A reviewing court, using the manifest error standard, resolves the issue of whether a factfinder's determination is reasonable. *Id*.

The standard of review applicable to whether a plaintiff carried the burden to prove that a medical provider deviated from the standard of care is manifest error. *Goodwin v. Kufoy*, 07-737 (La.App. 3 Cir. 1/16/08), 974 So.2d 815, *writ denied*, 08-368 (La. 4/4/08), 978 So.2d 331. Further, the standard of review applicable to whether a plaintiff can recover under multiple statutory caps under the Louisiana Medical Malpractice Act is also manifest error. *Batson v. South La. Med. Ctr.*, 99-232 (La. 11/19/99), 750 So.2d 949. However, a court's legal conclusions on questions of law are reviewed de novo. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993).

4

*II.      Appeals are from Judgments, not Reasons for Judgments*

The Goffs' first two assignments of error allege manifest error by the trial court by not addressing certain evidence in the record in its reasons for concluding that Dr. Yue did not commit medical malpractice. These assignments of error are misguided.

The reasons for judgment or conclusion by a trial court that form no part of the judgment are not reviewed by appellate courts, as "appellate courts review judgments, not reasons for judgment." *Bellard v. Am. Cent. Ins. Co.*, 07-1335, 07-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671; La.Code Civ.P. arts. 1918 and 2083. Reasons or conclusions "for judgment are merely an explication of the Trial Court's determinations. They do not alter, amend, or affect the final judgment being appealed." *GBB Props. Two, LLC v. Stirling Props., LLC*, 17-384, p. 4 (La.App. 3 Cir. 7/5/17), 224 So.3d 1001, 1004, (quoting *State in the Interest of Mason*, 356 So.2d 530, 532 (La.App. 1 Cir. 1977).

Therefore, given that these assignments question the trial court's reasons for reaching certain conclusions, we will not review the validity of those reasons. However, we note that the evidence the Goffs highlight in these first two assignments of error are part of the record this court uses to review the trial court's judgment.

*III.     Standard of Care and The Goffs' Burden of Proof*

The Goffs, in their third assignment of error, assert that the trial court committed manifest error in concluding that they failed to prove that Dr. Yue committed medical malpractice in providing medical care to Mrs. Goff on August 5 or August 6, 2013. We find merit to this assertion.

A plaintiff in a medical malpractice claim has the burden to prove, by a preponderance of the evidence: "(1) the standard of care applicable to the defendant;

(2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury." *Eggins v. Christus Health Cent. Louisiana*, 21-339, p. 8 (La.App. 3 Cir. 2/9/22), 333 So.3d 1270, 1276 (citing *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880); La.R.S. 9:2794(A).

"The degree of knowledge or skill possessed, or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances" constitutes the standard of care. La.R.S. 9:2794(A)(1). If a physician practices a particular specialty, the standard of care is the degree of care ordinarily practiced by physicians within that specialty. *Id*.

In this case, Dr. Yue is a licensed cardiologist, a specialty. Therefore, the applicable standard of care is the degree of care ordinarily practiced by cardiologists.

The Goffs alleged and must prove that, on August 5, 2013, Dr. Yue failed to diagnose Mrs. Goff with a STEMI, therefore, he failed to treat her medical condition properly and adequately. Further, Mrs. Goff alleged that Dr. Yue failed to timely transfer her to a medical facility capable of providing her with adequate care, namely Rapides Regional Medical Center, which allegedly caused Mrs. Goff to suffer irreparable damage to her heart, and a subsequent STEMI on August 6, 2013.

Just three days prior to the dates relevant in this case, on August 2, 2013, Mrs. Goff was seen in the Emergency Room at Beauregard Memorial Hospital. She presented with similar complaints as she would present with three days later. Mrs. Goff underwent an X- Ray, ECG, and other testing during this visit. The medical records of this visit indicate that Mrs. Goff's symptoms were attributed to anxiety. She was discharged with a prescription for anxiety medication, reporting no complaints until August 5, 2013.

6

On August 5, 2013, the relevant date in this matter, Mrs. Goff presented to Beauregard Memorial Hospital at approximately 6:30AM complaining of moderate to severe chest pain radiating towards her neck. Mrs. Goff did not present with shortness of breath, sweating, weakness, or nausea.

Dr. Matthew Adasofunjo, a hospitalist working in the ER assessed Mrs. Goff on August 5, 2013. Dr. Adasofunjo noted chest pain, with possible acute coronary syndrome, an umbrella term for situations where the blood supplied to the heart muscle is suddenly blocked, which can be sudden and complete, or it can come and go. He admitted Mrs. Goff, administered some medications, and ordered that three sets of cardiac enzyme tests be performed before turning her treatment over to Dr. Yue. Thereafter, Dr. Yue determined that the ECG, *while abnormal,* did not have sufficient ST-elevation for a diagnosis of a STEMI. (Emphasis added).

The parties submitted to the trial court a joint exhibit, the 2013 ACCF/AHA Guideline (the guideline) for the management of a STEMI. The three components to the guideline's definition of a STEMI diagnosis: (1) characteristic symptoms of myocardial ischemia, or angina, (2) ST-elevation greater than or equal to 1 mm in contiguous leads or greater than or equal to 1.5 mm in leads V2 to V3, and (3) subsequent release of biomarkers of myocardial necrosis, or troponin. If the record supports a finding that the Goffs failed to carry their burden of proof on any of these three components, then the trial court's judgment in this matter necessitates affirmation.

A.      *Characteristic Symptoms* of M*yocardial Ischemia*

Myocardial ischemia is inadequate circulation of blood to the myocardium (heart muscle). Thomas L. Stedman, STEDMAN'S MEDICAL DICTIONARY 457650 (2014). Angina is a severe, often constricting pain or sensation of pressure, usually referring to angina pectoris (chest pain). *Id*. at 39120. Classical symptoms of

myocardial infarction are chest pain typically accompanied by dyspnea (shortness of breath), diaphoresis (sweating), weakness, and nausea. *Id*. at 443710.

There is little debate between the parties whether the first component of the guideline's definition of a STEMI diagnosis was proven by the Goffs. However, the trial court noted that Mrs. Goff's symptoms on August 5, 2013, could have easily been attributed to non-heart related causes because chest pain is a symptom of anxiety, which Mrs. Goff was diagnosed with just three days prior. While that may be the case, the guideline simply requires that a patient present characteristic symptom of myocardial ischemia in order for this first element/component to be met. It is clear from the record that Mrs. Goff did so as, on August 5, 2013, she presented with angina or chest pain and tightness. Accordingly, we find that the Goffs carried their burden to prove the first component of the guideline's definition of a STEMI diagnosis. A contrary finding by the trial judge would be manifestly erroneous or unreasonable.

*B.    ST-elevation of Mrs. Goff's August 5, 2013 Electrocardiogram*

An Electrocardiogram involves attaching electrical leads to a patient and recording the heart's electrical activity. The ECG produces a graph of waves that are used to check for different heart conditions. The individual parts of the waves produced are labeled, left-to-right, with letters P through T. According to the guideline, the diagnostic thresholds for the ECG ST-elevation component of STEMI diagnoses for a patient with Mrs. Goff's parameters is an ST-elevation greater than or equal to 1 millimeter (mm) in contiguous leads or greater than or equal to 1.5 mm in leads V2 to V3.

On August 5, 2013 Dr. Yue had an ECG performed on Mrs. Goff. He read that ECG as abnormal but read no ST-elevation sufficient for a diagnosis of STEMI. Having decided that Mrs. Goff did not have a STEMI, Dr. Yue proceeded with treatment and care of Mrs. Goff as he felt appropriate.

At issue in this component are Leads I and aVL, which are continuous, lateral leads and whether the ST-elevation was 1 mm or greater. The trial court found that the Goffs "did not prove by a preponderance of the evidence that the ST Elevation in the August 5, 2013 ECG *clearly* met the threshold for the ST Elevation component of the STEMI diagnosis definition found in the applicable guideline" (emphasis added). We note that the guideline does not require evidence of meeting the threshold for the ST Elevation component of the STEMI diagnosis definition to be "clear." The guideline simply states that ST-elevation greater than or equal to 1 mm in contiguous leads or greater than or equal to 1.5 mm in leads V2 to V3 are present in an ECG.

Various medical professionals testified as to their interpretation of the August 5, 2013 ECG, and this component regarding Mrs. Goff's ST-elevation.

Dr. Brian Swirsky (Dr. Swirsky), the Goffs' expert in cardiology and interventional cardiology, stated that he examined the August 5, 2013 ECG and found ST-elevation measuring 1 mm in "Lead I and aVL." Dr. Swirsky went on to state, "it was associated with chest pain and associated with an elevated troponin, and, therefore, makes the **clear** definition of ST-elevation myocardial infarction." (emphasis added).

Dr. Naseem Jaffrani (Dr. Jaffrani), Mrs. Goff's treating cardiologist at Rapides Regional Medical Center, when asked what Mrs. Goff's ECG tracings from Beauregard revealed, stated "when I looked at the tracing, the Lead 1 and aVL. . . showed evidence of ST-elevation." The trial court noted that there were two ECGs

9

performed at Beauregard Memorial Hospital, one on August 5, 2013, and one on August 6, 2013, and it was unclear whether Dr. Jaffrani's finding of ST-elevation was referring to the August 5, 2013 ECG. Dr. Jaffrani's statement, in a vacuum, is ambiguous as to which ECG he is referring. However, Dr. Jaffrani followed up his statement about the ECG tracing with "[i]f this patient would have come to emergency room at Rapides Regional Medical Center, I would have diagnosed that patient as ST-elevation MI (myocardial infarction)." Dr. Jaffrani knew the applicable guidelines required a finding of ST-elevation 1 mm or greater in an ECG to conclude that a patient suffered an ST-elevation myocardial infarction. He stated that he would have diagnosed Mrs. Goff with an "ST-elevation MI" when she came to an ER in which he was working. Mrs. Goff went to the emergency room on August 5, 2013. Therefore, we find that the full context of Dr. Jaffrani's statement clarifies that he was referring to the August 5, 2013 ECG. Further, it is clear from Dr. Jaffrani's testimony that he felt Dr. Yue breached the standard of care in treating Mrs. Goff.

Dr. Jake Lebeau (Dr. Lebeau), Dr. Yue's expert in cardiology and interventional cardiology, stated that Lead I and aVL "*looks* to me like 1 millimeters of ST elevation." To reiterate, the applicable threshold for contiguous leads, such as Lead I and aVL, is 1 mm. Thus, we find that Dr. Lebeau, Dr. Yue's medical expert, also found sufficient ST-elevation to satisfy this component of diagnosing a patient with STEMI.

Dr. Rodney Reeves (Dr. Reeves) was a member of the medical review panel that found Dr. Yue had not committed malpractice and, thereafter, testified in this case. However, in his testimony in the record, the following exchange took place:

10

Q. [Y]ou were one of the members of the medical review panel that rendered opinion in this matter, correct?

A. Correct.

Q. And the original panel opinion concluded that the evidence was insufficient to establish a breach of the standard of care by Dr. Yue, correct?

A. Um -hum.

Q. However, since that time you were provided with additional evidence that was not available at the time of the medical review panel including a detailed narrative from Dr. Brian Swirsky, an interventional cardiologist in Baton Rouge, as well as other materials, uh, correct?

A. This is correct.

Q. And based upon a reexamination of all of the available evidence that you've discussed with us, you reached a different opinion from that which was rendered in the panel, correct?

A. Correct.

Q. And, in fact, you signed an affidavit dated August 6, 2019, did you not?

A. Correct.

Q. Doctor, based upon all of the information that has been made available to you for consideration, do you feel that you have enough information to provide expert testimony regarding the applicable standards of care under the circumstances?

A. I do.

Q. And do you have enough information to express an expert opinion regarding whether there was a breach of the standard of care by Dr. Yue?

A. I feel I do; yes, sir.

Q. And do you have sufficient information to express opinions regarding any injury, harm, cardiovascular injuries that may have resulted from or been associated with any breach by Dr. Yue?

A. I have very reasonable expertise in that capacity, yes.

Q. Doctor, would you share with the judge, first of all, in your opinion, did Dr. Yue *deviate from applicable medical standards*

*of care* regarding his medical management of Ms. Goff at Beauregard Memorial Hospital?

A.   Short answer is *yes*. . . . (emphasis added).

Thereafter, Dr. Reeves references Mrs. Goff's August 5, 2013 ECG, calling it "ugly" and states "if somebody showed that EKG to me in the hallway of the ER, said this lady's down the hall having chest pain, I'd say that's probably an anterior MI.  Probably a heart attack."

Finally, Dr. Tyrone Collins (Dr. Collins), another member of the medical review panel, stated in his deposition that his interpretation of the ECG would be non-STEMI.  While Dr. Collins stated that he did not find ST-elevation sufficient to diagnose Mrs. Goff with STEMI, Dr. Collins incorrectly applied the *male* threshold of greater than or equal to 2 mm of ST-elevation.  When looking at Mrs. Goff's ECG from August 5, Dr. Collins stated, "the ST segments are not - - they're abnormal but they're not elevated 2 millimeters."  He went on to state that the 1 mm threshold does not apply in this case.  Thereafter, when later asked whether there was a 1 mm elevation in the relevant leads, he stated, "I don't think so."

Like Dr. Reeves, Dr. Collins was a member of the medical review panel that found Dr. Yue had not committed malpractice.  Also similar to Dr. Reeves, Dr. Collins was provided with additional evidence that was not available at the time of the medical review panel including a detailed narrative from Dr. Swirsky and other materials.  After having reviewed those materials, Dr. Collins signed an affidavit, included in the record, that states, "I suspect that Dr. Swirsky was provided with more comprehensive data to review for his submission[,] and I agree that if there was evidence of a ST elevation myocardial infarction, *the care rendered by Dr. Yue was below the standard*."

To recapitulate, the record shows that the following experts opined that Mrs. Goff's August 5, 2013 ECG showed greater than or equal to 1 mm in continuous leads: (1) Dr. Jaffrani, Mrs. Goff's treating cardiologist; (2) Dr. Swirsky, the Goffs' expert; and (3) Dr. Lebeau, Dr. Yue's expert.

Considering the testimony above, and the record, as a whole, we find no reasonable, factual basis exists for the trial court to find that the Goffs did not prove by a preponderance of the evidence that the ST-elevation in the August 5, 2013 ECG met the threshold for the ST-elevation component of the STEMI diagnosis definition found in the guideline. Thus, we find manifest error by the trial court in concluding that the Goffs did not prove by a preponderance of the evidence that the ST-elevation in the August 5, 2013 ECG met the second component and the threshold for the ST-elevation component of the STEMI diagnosis definition found in the guideline.

C.    *Biomarkers of Myocardial Necrosis*

The final component of the guideline definition for a STEMI diagnosis is subsequent release of biomarkers of myocardial necrosis. The relevant biomarker in this event is troponin.

The trial court found that the Goffs failed to show by a preponderance of the evidence that there was a subsequent release of the relevant biomarker. Our review of the record indicates that the initial troponin test performed on Mrs. Goff gave a negative result. The trial court noted this as well. However, the guideline specifically states that the *subsequent* presence of biomarkers is necessary to meet this component.

In the case before us, the normal limit for the presence of troponin was 0.013. Mrs. Goff's initial test was negative. However, her subsequent test taken a few hours later was positive. According to the medical testimony, the initial negative result followed by a positive test is typical. Dr. Lebeau testified that troponin levels do not

13

typically trigger a positive result (by reaching abnormal levels) until about six hours after the traumatic event occurred. The guideline specifically states that a subsequent release of biomarkers is necessary to meet this component. Here, the medical records indicate that this is exactly what transpired in this case. Therefore, we find that the trial court was manifestly erroneous in finding that the Goffs failed to prove this component of the guideline.

*IV. TRANSFER OF MRS. GOFF*

Having found that the Goffs had carried their burden of proof, and remembering, that Mrs. Goff was presented to E/R on August 5, 2013 with a significant medical history of prior myocardial infarction with stent placement in 2010, and that Beauregard Memorial Hospital did not have the clearance to provide the treatment of a patient with a STEMI.

According to the guidelines stipulated and agreed upon by both the Goffs and Dr. Yue, "*Immediate* transfer to a [percutaneous coronary intervention (PCI)]-capable hospital for primary PCI is the recommended triage strategy for patients with STEMI who initially arrive at or are transported to a non-PCI-capable hospital[.]" (emphasis added). Thus, there is no dispute between the parties that Beauregard Memorial Hospital is not a hospital capable of PCI. So, for a patient diagnosed with a STEMI at Beauregard Memorial Hospital, the proper standard of care is an immediate transfer to a proper facility for treatment.

Therefore, in this case, the proper treatment and standard of care would be the transfer of Mrs. Goff to a facility capable of providing the services that a STEMI patient would require. However, Dr. Yue failed to transfer Mrs. Goff to a proper facility on August 5, 2013, even after receiving these positive test results discussed herein above.

14

Additionally, a review of the record shows that even though Dr. Adasifunjo's reading of Mrs. Goff's first ECG showed a STEMI, Dr. Yue disagreed and argued with Dr. Adasifunjo as to the reading of same. Having decided that Mrs. Goff did not have a STEMI, Dr. Yue prolonged her care needed, specifically Mrs. Goffs' immediate transfer, with other treatment he felt appropriate. On the morning of August 6, 2013, Mrs. Goff underwent a second ECG, which confirmed that she had suffered a STEMI the day before, and finally on the afternoon of August 6th Mrs. Goff was airlifted to Rapides General Medical Center where she obtained proper treatment for the STEMI she had suffered.

Accordingly, we find that the record contains sufficient evidence to show that the Goffs did carry their burden of proof that the diagnosis and treatment by Dr. Robin L. Yue did not meet the appropriate standard of care for Mrs. Goff on August 5, 2013 and August 6, 2013; and thus, we find that Dr. Robin L. Yue breached the applicable standard of care, as a cardiologist, in his diagnosis and treatment of Mrs. Goff.

V.     *One v. Two Damage Caps under the Louisiana Medical Malpractice Act*

The Goffs final assignment of error is that the trial court erroneously concluded that they "should not be allowed to recover from two damage caps under the Louisiana Medical Malpractice Act." We disagree.

Having found manifest error by the trial court that the Goffs failed to carry their burden of proof that Dr. Yue breached the standard of care in Mrs. Goff's treatment on August 5, 2013 and August 6, 2013, we now turn to whether this court need address if Dr. Yue breached the standard of care in Mrs. Goff's treatment on August 6, 2013. The determining factor on that issue is whether one or two damage caps under the Louisiana Medical Malpractice Act applies in this matter.

The supreme court, in *Stuka v. Fleming*, 561 So.2d 1371, 1373 (La.1990) (emphasis in original) (footnote omitted), stated:

> The Medical Malpractice Act, enacted by La. Acts 1975, No. 817, provides a scheme for compensation of medical malpractice victims who have been injured by qualified health care providers. Section 1299.42 B(2) limits the liability of a *single* qualified health care provider to $100,000 for the injury to or death of any one person. Under Section 1299.42 B(3) damages in excess of the total liability of *all* liable health care providers, up to $500,000, are to be paid by the Fund. Thus, according to the Act, if a suit is tried against two health care providers and a definitive judgment is rendered holding each legally responsible for the victim's damages which are found to exceed $200,000, the liability of each health care provider is $100,000, and the potential liability of the Fund is $300,000, with a total recoverable amount of $500,000. See *Kelty v. Brumfield*, 534 So.2d 1331 (La.App. 4th Cir.1988), *cert. denied*, 536 So.2d 1221 (1989).

In a concurring opinion in *Stuka*, Justice Dennis suggested that more than one damage cap may apply if multiple defendants "engaged in concerted action, whether the damages are severable, or whether the damages may be apportioned between the tortfeasors." *Stuka*, 561 So.2d at 1375.

This is not the situation before us. Here, the Goffs contend that a *single* health care provider, Dr. Yue, committed two tortious acts in his treatment of Mrs. Goff on two separate dates. However, ignoring the fact that there is a single defendant, we find that Dr. Yue's treatment of Mrs. Goff constitutes continuous treatment of one event, Mrs. Goff's STEMI on August 5, 2013. Further, there is no evidence in the record that Mrs. Goff's damages are severable. Accordingly, we find that one damage cap applies in this matter.

VI.    *Appropriate Damages under the Louisiana Medical Malpractice Act*

Finally, and having found manifest error by the trial court that the Goffs failed to carry their burden of proof that Dr. Yue breached the standard of care in Mrs. Goff's treatment on August 5, 2013 and August 6, 2013, we now turn to the issue of the damages caused by Dr. Yeu's malpractice in this matter.

16

According to the undisputed evidence presented to the trial court, Mrs. Goff suffered a loss of quality of life and diminished life expectancy due to her cardiac related medical situations present on August 5, 2013, and August 6, 2013. Given that the record before us is complete, and finding that the record contains sufficient evidence as to the Goffs' damages proven as a direct result of Dr. Yue's medical malpractice, we render that the Goffs are entitled to $128, 295.36 in special damages, based on Mrs. Goff's medical billing chart, that chart having a total of $131,126.16. However, we find that chart includes $2,830.80 for Mrs. Goff's August 2, 2013 treatment that predates Dr. Yue's medical malpractice. Additionally, we find that the Goffs are entitled to $371,704.64 in general damages, for all the Goffs' damages, all attributable to Dr. Yue's medical malpractice. Thus, we render that the Goffs are entitled to the sum of $500,000.00 in damages for the medical malpractice of Dr. Yue.

## CONCLUSION/DECREE

Patricia and Mark Goff raise four assignments of error. We do not consider the first two of those assignments as they pertain to the trial court's reasons for judgment and this court reviews judgments, not reasons for judgments.

In the third assignment of error raised, we find merit that the trial court manifestly erred by finding that the Goffs failed to carry their burden to prove that Dr. Robin Yue breached the applicable standard of care in his failure to diagnose Patricia Goff with a STEMI on August 5, 2013, and his treatment thereafter.

The Goffs contend in their fourth assigned error that two damage caps apply to this matter as Dr. Yue's medical malpractice constituted two tortious acts in his treatment of Mrs. Goff on two separate dates.

17

We find no merit to this assignment of error. Here, we have Dr. Yue failing to treat one medical event properly that resulted in inseparable damages over two calendar days, not multiple defendant's committing separate torts resulting in separate damages.

Having found that Patricia and Mark Goff carried their burden of proof in this matter, we render judgment in their favor in the total amount of $500,000.00, being $128,295.36 in special damages, and $371,704.64 in general damages. Costs of these proceedings are assessed to Dr. Robin L. Yue.

**AFFIRMED, IN PART; REVERSED, IN PART; AND RENDERED.**